CHICAGO—FIRST DISTRICT—DECEMBER, 1917.    117

The People ex rel. McMahon v. Davis, 209 Ill. App. 117.

# The People of the State of Illinois by Maclay Hoyne, State's Attorney, ex rel. Mrs. John McMahon et al., Appellants, v. Edwin S. Davis et al., Appellees.

## Gen. No. 23,522.

1. QUO WARRANTO, § 25*—*when petition for leave to file informa-tion in nature of ex parte granted.* The Circuit Court has juris-diction to grant a petition for leave to file an information in the nature of a quo warranto to the members of an old school board to test the title to office of newly-appointed members and to order the information filed *ex parte* under Rev. St. ch. 112, sec. 1· (J. & A. ¶ 8687); but such practice is not commendable, since an *ex parte* hearing in any cause is contrary to the spirit of the law, and will not be tolerated except in an emergency which would, but for such *ex parte* action, jeopardize important interests.

2. QUO WARRANTO, § 30*—*what is usual method of testing suffi-ciency of information in nature of.* A motion to vacate the order granting leave to file an information in the nature of quo war-ranto is the usual and approved method of testing the sufficiency of such information.

3. QUO WARRANTO, § 30*—*when order granting leave to file in-formation in nature of may be set aside.* Where it is made to ap-pear to the court that the filing of an information in the nature of quo warranto has been inadvertently or improperly allowed under a misapprehension of the law or facts, the court has power, during the term, to set aside the order granting leave to file the informa-tion, and in hearing and deciding the motion the court is author-ized to exercise judicial discretion, but the discretion is not a personal, arbitrary one, but is a sound, judicial discretion, resting upon well-established rules of law.

4. CONTINUANCE, § 29*—*when quo warranto proceedings may be continued until next term of court.* A quo warranto proceeding is no exception to that provision of the statute providing that "all causes and proceedings pending and undisposed of in any of said courts at the end of a term shall stand continued until the next term of the court," and where a motion to vacate is filed during one term but the hearing thereon is not concluded, the proceedings may be continued to a following term and the case disposed of at such term.

5. SCHOOLS AND SCHOOL DISTRICTS, § 39*—*what was nature of old school board of City of Chicago.* The old school board of the City

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

of Chicago, as it existed prior to the passage of the Act of April 20. 1917, was not a "body politic and corporate," but simply a department of the government of the city.

6. SCHOOLS AND SCHOOL DISTRICTS—*what was purpose of statute as to continuation in office of members of old board until qualification of members of new board.* The purpose of section 2 of the Act of April 20, 1917, relating to school districts in cities of over 100,000 population, and providing that in cities wherein at the time the law shall go into effect, there are members of the board of education holding office by appointment, such members shall continue in their offices until eleven persons have been appointed and qualified as members of the board of education under the act, was to avoid an interregnum between the old and new school board and to continue in force the management of the schools until the newly-appointed members qualified and took possession of their offices, and the old members did not become *ipso facto* members of the new board, with the power of organizing and appointing officers and employees.

7. MUNICIPAL CORPORATIONS, § 45*—*when powers of council as to appointment of school officers are exhausted.* Under the Act of April 20, 1917, relating to schools in cities of over 100,000 population, providing that the board of education shall consist of eleven members, to be "appointed" by the mayor with the approval of the council, when the appointments are made by the mayor and approved by the council they are complete and the council's power is exhausted in the premises, especially when the members appointed have qualified and attempted to enter upon the duties of their offices, the approval being in the nature of an executive rather than a legislative act, and, hence, the council was without power after the members had qualified and entered upon their duties to rescind its approval on a motion to reconsider, irrespective of what its rules may have provided.

Appeal from the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding. Heard in this court at the October term, 1917. Affirmed. Opinion filed December 17, 1917.

MACLAY HOYNE, for appellant.

SAMUEL A. ETTELSON and CHESTER E. CLEVELAND, for appellees.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

The People ex rel. McMahon v. Davis, 209 Ill. App. 117.

This is a controversy between the old and the new Board of Education of Chicago. The action is an information in the nature of a quo warranto. The petition is by the State's Attorney of Cook county upon the relation of the members of the old board, with the exception of two of the old board who were reappointed upon the new, and as to whose reappointment thereto there is no controversy. The respondents are the nine members of the new board who claim to be such by appointment by the mayor of Chicago and confirmation by the city council, as the statute requires.

The act under which two of the members of the old board and the respondents were appointed was an emergency act, which went into force on the 20th day of April, 1917, on which day it was signed and approved by Governor Lowden, section 128 of the Act provided that:

"Each city having a population exceeding 100,000 inhabitants shall constitute one school district, which shall maintain a thorough and efficient system of free schools, which shall be under the charge of a board of education, which shall be a body politic and corporate, by the name of 'Board of Education of the City of ............,' and by that name may sue and be sued in all courts and places where judicial proceedings are had. The said board of education shall consist of eleven members, to be appointed by the mayor, with the approval of the city council."

Said section fixes the terms of the appointees at from 1 to 5 years and provides for the appointment of successors thereafter, all subsequent appointees to hold their term for the period of 5 years from the 1st day of May in the year in which they are appointed. It is further provided that:

"If any person so appointed shall fail to qualify within a period of thirty days after his appointment, the office shall be filled by a new appointment for the unexpired term: *Provided, however,* that in such cities wherein at the time this law shall go into effect there are members of a board of education holding office by

120    Appellate Courts of Illinois.

The People ex rel. McMahon v. Davis, 209 Ill. App. 117.

appointment, such members shall continue in their office until eleven persons have been appointed and qualified as members of said board of education under this act.''

This section then provides for the qualifications of members, etc.

Section 129 provides, *inter alia:*

"The board of education shall elect annually, from its own number, a president and vice-president, in such manner and at such time as the board determines by its rules.''

The duties of president and vice-president are then prescribed, and it is then provided that "The board of education shall also elect a secretary, prescribe his duties, term of office and compensation.'' The board is also authorized by vote of a majority of the full membership to "appoint, as executive officers, a superintendent of schools, who shall have general charge and control, subject to the approval of the board, of the education department and of the employees therein of the public schools; a business manager, who shall have general charge and control, subject to the approval of the board, of the business department and of the employees therein of the public schools; and an attorney, who shall have general charge and control, subject to the approval of the board, of the law department and the employees therein of the public school system. Each of said executive officers shall hold his office for a term of four years. The board also may appoint, or provide for the appointment of, such other officers and employees as it may deem necessary, pursuant to the provisions of the civil service law, except as otherwise provided herein.

"The board shall, subject to the limitations contained in this act, prescribe the duties, compensation and terms of office of all officers. The board also shall, subject to the limitations contained in this act, prescribe the duties, compensation and terms of employment of all of its employees and determine which of

its officers and employees shall give bond, on what conditions, and in what amount.

"The appointment and removal of the superintendent of schools, the business manager and of the attorney, and all assistant attorneys, shall not be subject to the civil service law." Then follows the provision for the removal of the last-named appointees.

This section further provides: "All appointments of other employees of the board of education, except as herein otherwise provided, shall be made pursuant to the provisions of the civil service law, and no civil service employee shall be removed except for cause." The manner of the removal of the civil service employees is then provided for.

In the petition for leave to file the information the several provisions of the act are set forth. We regard the provisions which we have recited as sufficient for the purposes of our decision.

It is also averred that on the 20th day of April, 1917, the relators became and were *ipso facto* lawful members of the board of education under the prior act in force June 12, 1909. It is then averred that relators at a regular meeting of said board on May 23, 1913, May 29, 1917, June 6, 1917, June 13, 1917, and June 15, 1917, among other things, awarded divers and sundry contracts for the purchase of sites for the erection of school buildings, hiring the employees of said board, etc., and paid and contracted to pay out to divers persons for work and labor done and materials furnished large sums of money and salaries to all officers and employees, "held the annual election of business employees, engineer-custodians, janitors, bathroom attendants, and truant officers;" and also elected the secretary and appointed the business manager, attorney and superintendent of schools of said board.

And it is further averred that the relators as such members of the board of education on and since the 20th day of April, 1917, have continuously performed

all of the duties and functions and exercised the franchise and powers of and pertaining to officers of the board of education until the 19th day of June, 1917; that on that day, and continuously since then, the relators have been prevented by the respondents from performing the duties and functions and from exercising the franchise and powers of their said office. There is then set out the action on June 18, 1917, of the common council approving the appointments made by the mayor of the remaining nine members of the board. The proceedings are fully set forth, with the names of the aldermen voting both for and against confirming the appointments, also a substitute motion for such appointments, and to lay the motion to reconsider upon the table. The proceedings of the council at its next meeting thereafter, June 22, 1917, are then set out, in which a motion was made to adjourn until 6 o'clock p. m., and a substitute motion made "that the council do now adjourn." On the motion to adjourn the ayes and nays were demanded. Thereupon the mayor, being in the chair and presiding, put the motion "that the council do now adjourn" to a *vive voce* vote, and declared that the motion was carried and the council was adjourned. An appeal from the decision of the chair was then made. The mayor thereupon left the council chambers, all the aldermen remaining in their seats. It was then moved and carried that "Alderman Richert do act as temporary chairman during the absence of the mayor from the council chamber." This motion was seconded and carried, whereupon Alderman Richert assumed the chair. The question being put: "Shall the decision of the Chair on the motion to adjourn be sustained?" the yeas and nays on this motion were, 1 yea and 53 nays. The Chair then ruled that the decision of the mayor on the motion to adjourn had not been sustained and that the question before the council was a motion to adjourn, which being put was lost, yeas 1, nays 51. A

motion was then made, which prevailed, that the mayor be notified that the council was in session, and thereupon a committee was appointed to notify the mayor that the council was in session, which committee returned and reported that it had waited upon the mayor and had informed him that the council was in session and that the mayor had answered that he was "much obliged" and that he would talk the matter over with the corporation counsel. It was then moved to take from the table the motion to reconsider the vote, made June 18, 1917, to concur in the nine appointments of membership on the board of education, which motion to reconsider had been laid upon the table June 18, 1917. The motion to take from the table the motion to reconsider it prevailed by yeas 46, nays 22. The Chair thereupon stated that the motion to reconsider the vote on the motion to concur in the nine appointments to membership on the board of education was before the council. It was then moved to lay on the table the motion to reconsider. This motion was ruled out of order. The mover of the motion to reconsider then asked leave to withdraw that motion. The vote on this motion was yeas 21, nays 46. A motion was made to adjourn, which was lost, yeas 19, nays 48. A motion to reconsider was then put and carried, yeas 46, nays 20. Thereupon the Chair stated that the question before the council was the motion to concur in the appointments to membership on the board of education of the nine appointees under consideration by the council. The previous question was then moved on the motion to concur in these appointments. The question being put on the motion for the previous question, the vote thereon was 43 yeas and 24 nays. Thereupon the Chair declared that the motion on the previous question was lost, for the reason that it required a two-thirds vote for its adoption. The Chair after overruling a point of order made that only a majority vote was needed to carry a motion for the previous

question, put the question on the motion made June 18, 1917, to concur in the appointment to membership on the board of education, under consideration by the council, naming the appointees with their several terms of office. The vote thereon was yeas 22, nays 45, whereupon the Chair declared that the motion to concur was lost.

The petition then sets out the rules of the council, Rule 29 being as follows:

"A motion to simply lay a question on the table shall not be debatable; but a motion to lay on the table and publish, or any other condition, shall be subject to amendment and debate.

"A motion to take any motion or other proposition from the table may be proposed at the same meeting at which such motion or proposition was laid upon the table, provided two-thirds of the aldermen vote therefor."

Roberts' Rules of Order are also set out in the petition. It is then charged that the respondents on and since the 19th of June, 1917, have assumed and pretended to use, exercise, enjoy and perform and do assume and pretend to use, exercise, enjoy and perform, without warrant or authority of law, the franchises, functions, duties and powers of the said office of members of the board of education, and that the relators are the duly acting and lawful members of the board of education, and are lawfully entitled to perform and have the right to use, enjoy, exercise and perform the franchises, functions, duties and powers of the office of the members of said board of education, in accordance with law; that the respondents now and since the 19th day of June, 1917, are assuming and pretending to use, enjoy, exercise and perform said franchise, functions, duties and powers; and that respondents during all of the time aforesaid have usurped and do usurp upon the people aforesaid the powers, rights, etc., to their great damage and prejudice.

On June 30, 1917, leave to file the information in the

nature of quo warranto was allowed *ex parte* and summons ordered issued returnable in 6 days.

On July 6, 1917, on motion of respondents, after hearing and deliberation by the court, it was ordered that respondents be given leave to file their notice and to enter such motion of record; that a motion to vacate the order granting leave to file the information be set aside, and that the petition for leave to file said information be dismissed and the proceeding be abated and dismissed.

On July 14, 1917, the motion to vacate and set aside the order granting leave to file the information in the nature of a quo warranto having been partially heard, was continued to the next term of court, and on July 19, 1917, at the conclusion of the hearing it was ordered as follows:

"The motion of the respondents that the order granting leave to file the information in the nature of quo warranto herein be vacated and set aside and that the petition for leave to file said information be dismissed and that this proceeding be abated and dismissed, having been fully argued by counsel for the respective parties and considered by the court, it is

"Ordered, that said motion be and the same is hereby allowed and that said order granting leave to file said information be and the same is hereby vacated and set aside, and that said petition for leave to file said information be and the same is hereby dismissed and that this proceeding be and the same is hereby abated and dismissed and that the respondents go hence without day."

From this judgment relators prosecute this appeal.

We will first dispose of the questions of procedure raised by the relators.

The court had jurisdiction to grant the petition and to order the information filed *ex parte* (section 1, ch. 112, Rev. St., title "Quo Warranto," J. & A. ¶ 8687); but in a matter of so much public importance, and where the public officials involved and the law department of the city were so readily accessible, we doubt

126    APPELLATE COURTS OF ILLINOIS.

The People ex rel. McMahon v. Davis, 209 Ill. App. 117.

the expediency of so doing; more especially is this manner of procedure undesirable, to say the least, when the whole question involved, as in the instant case, could be—as it finally was—disposed of upon the averments of the information. An *ex parte* hearing in any cause, or in any of its stages of progression, is contrary to the spirit of the law and will not be tolerated except in an emergency which would, but for *ex parte* action, jeopardize important interests. A motion to vacate the order granting leave to file the information is the usual and approved method of testing the sufficiency of such information. By granting leave to file the information the court did not exhaust its discretionary powers regarding the filing of such information. It was according to well-established practice within the power of the court to entertain a motion to vacate such order, to proceed to determine the rights of the parties from the averments of the information, to pass upon the powers of the court, to set aside its order and to adjudicate the rights of the parties as they were made to appear from the pleadings; and if the court concluded that the averments of the information were insufficient to justify an award of the writ, it was its duty to vacate the order theretofore entered, and to enter an order denying leave to file the information and to dismiss the proceeding, which it did. *People v. Wanmer*, 276 Ill. 460. The rule governing such action is thus stated in the *Wanmer* case, *supra:*

"If it was made to appear to the court that the filing of the information had been inadvertently or improperly allowed under a misapprehension of the law or the facts, the court had power, during the term, to set aside the order granting leave to file the information. In hearing and deciding the motion the court was authorized to exercise discretion, but the discretion was not a personal, arbitrary one, but was a sound, judicial discretion, resting upon well established rules of law. (*People v. Town of Thornton*, 186 Ill. 162; *People v.*

*Mackey*, 255 id. 144; *People v. Union Elevated Railroad Co.*, 269 id. 212).  The record does not exhibit any fact outside of or contrary to the averments of the petition which might properly influence the court in the decision of the motion, and it is not claimed that there was any such existing fact, so that the question to be determined is whether the petition shows sufficient ground for filing the information.''

*People v. Union El. R. Co.*, 269 Ill. 212, is supporting authority for the rule laid down in the *Wanmer* case, *supra.*

Relators insist that the court was without jurisdiction to enter the order at a term succeeding the one at which the petition and information were filed.  There is no force in this contention.  The pleadings were filed and the motion to vacate partially heard at the June term and finally disposed of at the succeeding July term.  On the last day of the June term, the hearing not being concluded, the respondents moved to continue the motion to vacate to the next term of court, which was allowed against the objection and exception of relators.

We think that a quo warranto proceeding is no exception to that provision of the statute which provides that ''all causes and proceedings pending and undisposed of in any of said courts at the end of a term shall stand continued until the next term of the court.''  The motion to vacate being made at the same term of court at which the *ex parte* leave to file the information was granted was sufficient compliance with the quo warranto statute.  The court not having concluded the hearing at the June term had a right to allow the motion to continue the further hearing to the next July term, and without such an order the statute would have automatically continued the cause for disposition to the succeeding July term.  We hold that the court had jurisdiction to enter at the July term the order which it did disposing of the quo warranto proceeding.

The contention that the nineteen remaining members

128    APPELLATE COURTS OF ILLINOIS.

The People ex rel. McMahon v. Davis, 209 Ill. App. 117.

of the old board became, when the Act of April 20, 1917, went into effect creating the new board, *ipso facto* members of that board, is fallacious. The new act did not continue the old board and its organization, but created a new body politic and corporate, as clearly appears from the provision of the new act, which reads that "The city shall constitute one school district, which shall maintain a thorough and efficient system of free schools, which shall be under the charge of a board of education, which shall be a body politic and corporate," the said board to consist of eleven members. The old board was not a body politic and corporate. It was simply a department of the government of the City of Chicago. *Brenan v. People,* 176 Ill. 620.

The relators insist, however, in support of their contention, that section 2 of the 1917 act, which reads, "Provided, however, that in such cities wherein at the time this law shall go into effect, there are members of a board of education holding office by appointment, such members shall continue in their office until eleven persons have been appointed and qualified as members of said board of education under this act," constitutes them members of the new board. This section of the act is not susceptible of any such construction. The evident purpose was to avoid an interregnum between the old and the new boards, between the department of the city government under the old law and the body politic and corporate created by the 1917 act. It was a wise provision of the lawmakers, which was intended to continue after the act went into force the management and carrying on of the schools of Chicago until the new board of eleven members was appointed and qualified, when the members of the old board, automatically with the old board itself, disappeared and the eleven appointees under the 1917 act became and were the Board of Education of Chicago—a body politic and corporate—to whom the law had intrusted the management and control of the schools of Chicago.

The old board, in its attempt to appoint the employees and officers created by the act of 1917, clearly usurped the power and authority of the board created by that act, and their attempt so to do must be held to be abortive and their action in this regard null and void. There is, so far as the board of education as constituted under the act of 1917 is concerned, no question of the members of the old board being members of the new, either *de jure* or *de facto*. They were neither. As long as they served prior to the organization of the board under the act of 1917 they were members, not of the new board, but of the old, which continued to exist until, and only until, members of the new board had been appointed and qualified and had taken possession of their office. To hold otherwise would be, by legal interpretation, to permit the old board to foist upon the new its officers and employees, and to deprive the new board of the functions expressly given to it by the 1917 act—functions and powers which the old board did not possess.

We find nothing in the 1917 act which would warrant the court in holding that the old board could organize the new and appoint its officers and employees. So to do would defeat the very purpose of the act, which in terms abolished the old board and gave new and distinctly different functions to the new board. If relators' contention in this regard could be sustained, the effect would be to hamper the new board in the performance of its duties and in the exercise of the powers given to it by the act creating it. It therefore follows that the actions of the old board in this regard were without warrant of law and void.

It appears that the nine respondents were appointed by the mayor to complete the eleven members of the board of education as provided in the act of 1917 creating the new board; that their names were sent to the Common Council of the City of Chicago for approval; that the body approved of the appointments, as ap-

130    APPELLATE COURTS OF ILLINOIS.

The People ex rel. McMahon v. Davis, 209 Ill. App. 117.

pears from the information recited in the first part of this opinion; that a motion to reconsider that vote was laid upon the table, and that at a subsequent meeting of the council an effort was made to take the motion to reconsider from the table and act upon it. A motion to adjourn was carried by the strong arm of the mayor aided by the gavel. The mayor, refusing to entertain an appeal from his ruling, abruptly left the council chamber. This did not operate to adjourn the council meeting. The members retained their seats, nominated a chairman *pro tem* to act in the absence of the mayor, notified the mayor of that fact, for which he said he was "much obliged," but he failed to return, whereupon the council continued its deliberations and, after sundry preliminary motions had been made, finally voted not to approve of the mayor's appointment of the nine members of the board, whose appointment it had approved at the previous meeting of June 18, 1917. It appears from the averments of the petition and information that these nine members qualified and proceeded to discharge the functions of their office prior to the next meeting of the council June 22, 1917. Having so done, the legality of their appointment rests upon the solution of two questions: First. When the council approved of the appointments did its power over the matter end? Second. If not, were the subsequent proceedings, by which the appointments of the mayor were disapproved, legal?

The proceedings of the council by which the appointments were approved were in all respects regular, and if the council had the power at a subsequent meeting of its body to reconsider its former action and to disapprove of the mayor's appointments and to recall them, then, as such proceedings were in strict accord with the rules of the council, as well as with Roberts' Rules of Order, the respondents are not members of the board. However, we are of the opinion that after the approval by the council of the mayor's appoint-

ments, such appointments were complete and that the council could not reconsider its action at any subsequent meeting after the members had qualified by taking possession of their offices. Nor could the mayor, of his own volition, if at this time he had so desired, have withdrawn the appointments or removed the appointees. Neither the council nor the mayor could remove the appointees thereafter except in the manner prescribed in the act of the Legislature for the removal of members, under which the appointments were made.

Some stress is laid upon the meaning of the words "elect" and "appoint," and it is argued that they are synonymous. However this may be, we think it of little importance in the determination of this case. It is our opinion, as applied to the act of 1917, that "to appoint" means "to select," and in compliance therewith the mayor selected the nine members and the council approved of such selection. Moreover, while this question is not free from doubt and difficulty, we are inclined to the view that under parliamentary usage, the council, when it acted upon the appointments, exhausted its authority to further proceed in the matter, and it had no power to reconsider its former action of approval. The appointments of the respondents were complete when the council on June 18, 1917, approved such appointments. The approval of the appointments was in the nature of an executive act as distinguished from a legislative act, and neither the rules of the council nor Roberts' Rules of Order was available to clothe the council with authority to reconsider and rescind its former action. The language of the act is that "The said Board of Education shall consist of eleven members, to be appointed by the mayor with the approval of the City Council." When the appointments were made by the mayor and approved by the city council, they were complete and the council's power in the premises was exhausted. McQuillin and Dillon on Municipal Corporations are in

harmony with and sustain our conclusion. In 2 Dillon on Corporations (5th Ed.), sec. 529, the author lays down the principle as follows:

"In electing to office it has been held that the vote given determines the result, and that a formal declaration by the mayor as presiding officer that the candidate has been elected is not essential, nor is a resolution by the board or council declaring the candidate to be elected. The weight of authority is also to the effect that when a completed vote has been taken which results in the giving of the necessary majority or plurality to one of the candidates, the council cannot rescind its vote or reconsider its action and elect another person."

2 McQuillin, *supra,* sec. 614, gives the following illustration:

"A consideration of the acts of councils in electing and appointing or confirming the appointment or nomination of officers and agents will fully illustrate the difference between a completed and incompleted act or vote in regard to the right of reconsideration and rescission. Thus, where the resignation of an officer was presented to the mayor to take effect at a future day, which resignation was accepted by the mayor and forwarded to the council which also accepted it, it was held that the act of acceptance of the resignation was complete and the council alone had no power to reconsider the action by which that body accepted the resignation. And in such case where the mayor, in accordance with the charter provisions, nominated a successor and sent the nomination to the council which confirmed the appointment, the council cannot at a subsequent meeting reconsider the vote by which the nomination was confirmed."

The following authorities support the rule as announced by McQuillin and Dillon: *Whitney v. Van Buskirk,* 40 N. J. L. 463; *State ex rel. Childs v. Wadhams,* 64 Minn. 318; *State v. Phillips,* 79 Me. 506; *State ex rel. Burdick v. Tyrrell,* 158 Wis. 245. In the *Tyrrell* case, *supra,* the court said:

"Moreover, after the election of relator, acceptance

of the office, and qualification by him, the council had no power to reconsider and elect another.''

We think this principle is sustained by the reasoning in *People v. Lower*, 251 Ill. 527, in which the court said:

''It is true that an appointment is complete when the last act required of the appointing power has been performed, and the authority to make the appointment has then been exhausted. In such a case the appointing power cannot revoke the appointment, and the one appointed can only be removed by lawful authority.''

There is no fact stated in relators' pleadings which would authorize the court to grant relief by way of a writ of quo warranto. The relators have not only shown themselves not to be entitled to the offices which they claim, but the facts set forth by them demonstrate that the respondents were duly and legally appointed members of the board of education, the functions of which they entered upon and have since such appointment been performing.

There is no reversible error in this record, and the judgment of the Circuit Court is affirmed.

*Affirmed.*