*In re* PETITION OF VILLAGE OF LONG GROVE TO ANNEX CERTAIN TERRITORY (The Village of Long Grove, Petitioner-Appellant, v. The Village of Buffalo Grove *et al.*, Objectors-Appellees).

Second District   No. 2—86—0320

Opinion filed May 18, 1987.—Rehearing denied July 21, 1987.

John M. Mullen, of Conzelman, Schultz, Snarski & Mullen, of Waukegan, for appellant.

Edward Slovick, of James S. Gordon, Ltd., of Chicago, Russell L. Engber, of Highland Park, and William G. Raysa, of Oak Park, for appellees.

JUSTICE HOPF delivered the opinion of the court:

Petitioner, the village of Long Grove, appeals from the dismissal of proceedings on its ordinance seeking annexation of certain territory. Long Grove raises five issues on appeal: (1) whether the village of Buffalo Grove had standing to object to Long Grove's annexation ordinance; (2) whether Long Grove's ordinance lost its priority due to unreasonable delay of the annexation proceedings; (3) whether the territory sought to be annexed meets the statutory requirement of contiguity; (4) whether all objections to the annexation ordinance should have been stricken on grounds that they failed to show the objectors are interested persons as required by statute; and (5) whether Long Grove should have been granted leave to amend the legal description contained in its ordinance.

In August 1979 certain property owners (Citrust) filed a petition with the village of Buffalo Grove requesting annexation of their land even though one of the owners had not signed the petition. On February 12, 1980, the neighboring village of Long Grove adopted an ordinance expressing its desire to annex certain property, some of which was already included in the Buffalo Grove petition. Long Grove did not notify either Buffalo Grove or the affected landowners of its annexation ordinance. On February 13, 1980, the village of Lincolnshire filed with the Lake County circuit clerk an ordinance seeking annexation of the same land sought by Long Grove. Long Grove filed its ordinance on February 14, 1980.

A copy of the Citrust petition and a letter advising that no action had been taken in regard to the petition by the Buffalo Grove village

board was sent to Long Grove on February 19, 1980. Another letter from Buffalo Grove, dated October 8, 1980, informed Long Grove and other neighboring governmental entities that the continued public hearing on the Citrust property had been cancelled and that the matter would be republished for hearing later in the year. Buffalo Grove had no further communication with neighboring villages regarding the status of the Citrust petition. The petition was neither withdrawn by the petitioners nor disposed of by the village board.

The Long Grove ordinance which had been filed in 1980 periodically came before the trial court through progress calls. The matter was continued on Long Grove's motion 26 times over the course of the next six years. None of the continuance orders reflect any other activity by Long Grove in regard to the ordinance. Lincolnshire's annexation ordinance was dismissed in 1983.

In early 1986 Buffalo Grove held hearings on the development and annexation of territory which encompassed a portion of the land included in the 1980 Long Grove annexation ordinance. Representatives of Long Grove appeared at these hearings and objected to the plans being considered by Buffalo Grove. Subsequently, Long Grove set its own annexation ordinance for hearing on March 18, 1986. On March 3, 1986, Buffalo Grove adopted the annexation ordinance which it had considered at the prior public hearings.

Numerous objections to Long Grove's ordinance, including objections of Buffalo Grove, were filed prior to the March 18 hearing. Long Grove's motion to strike Buffalo Grove as an objector was denied, as was its motion to strike all objections on grounds that they did not show that any of the objectors were interested persons within the meaning of the statute.

At the conclusion of the hearing on the ordinance the court sustained two categories of objections: those based on Long Grove's delay in acting on its ordinance and those based on lack of contiguity of the proposed annexation. Accordingly, proceedings on Long Grove's annexation ordinance were dismissed. This appeal followed.

Long Grove initially attacks Buffalo Grove's standing to object to the Long Grove ordinance. It appears that Long Grove may have wished to strike Buffalo Grove as an objector in hopes of precluding trial consideration of the issues arising from the fact that Buffalo Grove had adopted a competing annexation ordinance. However, we need not decide the issue of Buffalo Grove's standing in order to reach the merits of this case.

Buffalo Grove filed objections jointly with three other objectors. While one of those objectors was stricken, the record shows that the

other two are owners of land included in both the Long Grove and Buffalo Grove ordinances. The statute controlling annexation proceedings allows objections by any interested person. (Ill. Rev. Stat. 1985, ch. 24, par. 7—1—3.) We believe owners of property sought to be annexed qualify as interested persons. (See *City of East St. Louis v. Touchette* (1958), 14 Ill. 2d 243, 248-49, 150 N.E.2d 178.) Thus, Buffalo Grove's co-objectors have standing to object to the Long Grove proceedings. Moreover, we see no reason why the Buffalo Grove ordinance could not be raised in the Long Grove proceedings by property owners who are unquestionably affected by both villages' ordinances. Since the existence and ramifications of Buffalo Grove's ordinance were properly made known to the court by the landowners, the standing of Buffalo Grove to raise the issue is irrelevant here.

Long Grove next contends that the trial court erred in finding that the village abandoned its annexation ordinance. As related above, the Long Grove ordinance was filed on February 14, 1980, but not set for hearing until March 1986. The trial court found this to be an unnecessary and unreasonable delay which resulted in an abandonment of annexation proceedings by Long Grove. The law controlling this question persuades us that the trial court did not err.

■■ We recognize at the outset that, as a general rule, competing annexation proceedings may not be considered concurrently. In *City of East St. Louis v. Touchette* (1958), 14 Ill. 2d 243, 150 N.E.2d 178, it was held that no proceeding for annexation of a territory to a municipality could be legally initiated after a petition had been filed for the organization of the same territory into a city unless the organization was defeated. On its facts, *Touchette* applied only where an incorporation was pending at the time an annexation petition was filed. In *City of Countryside v. Village of La Grange* (1962), 24 Ill. 2d 163, 180 N.E.2d 488, the principles of *Touchette* were extended to situations like the one now before us, where an annexation petition is pending at the time another annexation proceeding involving the same territory is initiated. Accordingly, multiple overlapping annexation petitions are normally considered and disposed of in the order in which they are filed.

■■ While successive annexation proceedings have priority according to when they are initiated, that priority can be lost by unnecessary and unreasonable delay on the part of a petitioner. In *People ex rel. Village of Worth v. Ihde* (1961), 23 Ill. 2d 63, 177 N.E.2d 313, property owners petitioned the village to annex certain land. Five months later, while the petition was still pending before the village, the same land was involved in an incorporation petition. It was ar-

gued that the village's jurisdiction excluded the land from the incorporation proceedings. The court noted that, after initial discussions between petitioners and the village, the petition was tabled until further notice and, despite regular village meetings, no action was taken until 4½ months after the incorporation petition had been filed. The village made no showing that the delay was necessary or that the incorporation petitioners were aware of the pending annexation petition. The court concluded that by its inaction the village had abandoned the jurisdiction it had previously acquired. According to the court: "To decide otherwise would be to allow a municipality, by sheer inaction, to indefinitely frustrate the incorporation plans of a community." 23 Ill. 2d 63, 68, 177 N.E.2d 313.

A similar result was reached in *City of Countryside v. Village of La Grange* (1962), 24 Ill. 2d 163, 180 N.E.2d 488, where the village failed to act on the property owners' annexation petition for a period of eight months. The court held that due to its long delay and inaction, the village had been deprived of any priority it might have had over the territory in question there.

The cases cited above control the matter now before us. Long Grove filed its annexation ordinance with the court and then did nothing more than seek continuances for six years. No steps were taken to proceed toward actual annexation during that time. It was only when it became apparent that Buffalo Grove was considering an annexation which involved overlapping property that Long Grove set its petition for hearing.

Long Grove asserts that the instant case differs from *Ihde* and *Countryside* in that its petition was before the court, whereas the abandoned petitions in those cases were filed with municipalities rather than the court. Long Grove characterizes the difference as one between legislative annexation and judicial annexation and posits that this difference precludes an abandonment. The significance assigned by Long Grove to the differences between the two annexation procedures is not warranted.

■ We acknowledge that certain types of annexations require court involvement while others do not. All, however, are statutory. There is nothing in the statute to indicate that any particular type of annexation should be exempt from the *Ihde/Countryside* rule regarding abandonment. Nor do those two cases themselves draw any express distinction between legislative and judicial annexations. As noted earlier, the *Ihde* court opined that unreasonable delay by an annexing authority must be held to result in abandonment in order to prevent a municipality, by simply not taking action, from indefinitely

frustrating the plans of another community. This rationale, which was echoed in *Countryside*, indicates that the abandonment principle is meant to prevent the unwarranted hindrance of incorporation and annexation proceedings. We see no reason why this reasoning should not apply merely because the impediment occurs in a judicially supervised and monitored annexation. That Long Grove filed its petition in court does not mitigate Long Grove's subsequent abandonment of that petition.

■ Long Grove also argues that the 1979 Buffalo Grove petition and the 1980 Lincolnshire ordinance had priority over its ordinance and precluded it from moving forward with its annexation plans. This argument is without merit. Although, as we stated earlier, competing annexation ordinances may not be considered concurrently, in this case Long Grove's ordinance was not actually faced with competition.

First of all, in February 1980, Buffalo Grove sent to Long Grove a copy of the Citrust petition for annexation. At that time Long Grove knew or should have known that the validity of the Buffalo Grove petition was questionable. The annexation statute requires that such a petition must be signed by owners of the land included in the petition. (Ill. Rev. Stat. 1985, ch. 24, par. 7—1—2.) A brief perusal of the petition itself reveals that it was not signed by one of the owners. The trial court characterized the Citrust petition as "patently invalid" due to the absence of that owner's signature. At the very least, Long Grove was alerted as early as February 1980 that the Buffalo Grove petition might have been void *ab initio*. Buffalo Grove also informed Long Grove at that time that its village board had taken no action on the petition.

About 10 months later, in October 1980, Buffalo Grove notified Long Grove that the hearing on its petition had been cancelled. This cancellation occurred in the midst of a highly publicized dispute between one of the owners and the prospective developers of the land sought to be annexed. Testimony and numerous newspaper articles admitted at trial indicate that the public was well informed regarding this ongoing controversy and the parties' ultimate inability to resolve their differences. It was widely reported when negotiations ceased and the developer failed to renew an option on the land. There is no doubt that it was publicly evident that the motivation for Buffalo Grove's proposed annexation had ceased to exist as early as October 1980.

We observe as a matter of common experience that local communities are alert to activities and circumstances which might affect them even when those activities occur in neighboring municipalities

and surrounding unincorporated territory. We find it untenable that Long Grove was not aware that Buffalo Grove's annexation activity had come to a stop. However, even if it was unaware, the total dearth of any further action by Buffalo Grove should have led to the inevitable conclusion that Buffalo Grove had abandoned its proposed annexation and that Long Grove was free to pursue its own annexation plans.

The Lincolnshire ordinance was no more of a bar to Long Grove's proposed annexation than was the Buffalo Grove petition since the Lincolnshire proceedings were dismissed in 1983 for want of prosecution. Nevertheless, long after this dismissal and long after the furor over the land sought to be annexed by Buffalo Grove had subsided, Long Grove still merely sought continuances on its own petition. Long Grove has shown no necessity for its delay and inaction. Moreover, Buffalo Grove insists it did not know Long Grove had a petition before the court, and Long Grove has not shown otherwise. On these facts, we find that Long Grove abandoned its petition. Accordingly, Long Grove's petition lost any priority it previously enjoyed in relation to overlapping territory included in Buffalo Grove's petition.

As a final matter, we mention the objectors' argument that Long Grove has abandoned not merely the priority its annexation ordinance previously enjoyed, but has abandoned the ordinance itself, thus causing the loss of court jurisdiction over the ordinance. The objectors correctly note that *People ex rel. Village of Worth v. Ihde* (1961), 23 Ill. 2d 63, 177 N.E.2d 313, spoke of abandonment of "jurisdiction," while the village in *City of Countryside v. Village of La Grange* (1962), 24 Ill. 2d 163, 180 N.E.2d 488, was merely deprived of "priority." Objectors argue that the cases taken together indicate a loss more akin to jurisdiction than priority and urge us to find that upon abandonment by Long Grove the circuit court lost jurisdiction over the ordinance.

Apparently the objectors seek such a ruling because Long Grove has urged that Buffalo Grove's annexation ordinance is invalid. Long Grove reasons that if the Buffalo Grove ordinance is found to be invalid, there will be no annexation proceedings competing with its own, the question of priority will be moot, and Long Grove can proceed with its annexation plans undisturbed. If, however, as Buffalo Grove urges, abandonment resulted in loss of jurisdiction by the court, Long Grove cannot proceed on this action, and the validity or invalidity of Buffalo Grove's ordinance is irrelevant.

Long Grove's argument rests squarely on the assumption that the Buffalo Grove ordinance may be considered here. This assumption is

incorrect. The validity of Buffalo Grove's ordinance was never before the trial court and is not now before us. On those occasions when the issue tentatively arose in the proceedings below, the trial judge properly noted that the validity of Buffalo Grove's ordinance was not before him, and he declined to comment on that question. Similarly, consideration of Buffalo Grove's ordinance on appeal would interject wholly inappropriate subject matter into these proceedings.

The only matter properly before us is whether the trial court committed reversible error in sustaining objections and dismissing Long Grove's annexation ordinance. As noted above, the objections based on unreasonable delay were properly sustained since Long Grove's inaction resulted in abandonment of its priority position. What Long Grove attempts to do here is to defend its priority. Any such attempt is obviously futile, however, since Long Grove has no priority to defend. It is precisely that priority which it abandoned. To hold otherwise would be to deeply undermine the principles which give rise to the abandonment rule. Indeed, if Long Grove were allowed to challenge Buffalo Grove here, it could not be said that Long Grove had abandoned its priority at all.

We note in passing that the validity of the Buffalo Grove ordinance can properly be attacked through the statutorily prescribed objection procedure as well as through *quo warranto* proceedings. In fact, both parties indicate in their appellate briefs that Long Grove has filed such a *quo warranto* action.

While loss of court jurisdiction over its ordinance would unquestionably preclude Long Grove from further pursuit of its challenged annexation plans, the village is just as effectively barred from proceeding by its abandonment of the priority once accorded its annexation ordinance. Thus, we need not decide the jurisdiction issue.

Because we have found an abandonment of priority, we do not reach the other points raised by Long Grove. The order of the circuit court of Lake County dismissing the Long Grove annexation proceedings is affirmed.

Affirmed.

LINDBERG, P.J., and DUNN, J., concur.