THE PEOPLE *ex rel.* THE VILLAGE OF LONG GROVE, Plaintiff-Appellant, v. THE VILLAGE OF BUFFALO GROVE, Defendant-Appellee.

Second District   No. 2—86—1165

Opinion filed October 30, 1987.

Conzelman, Schultz, Snarski & Mullen, of Waukegan (John M. Mullen, of counsel), for appellant.

William G. Raysa, of Bloche, French & Raysa, of Oak Park, and Edward Slovick, of James S. Gordon, Ltd., of Chicago (James S. Gordon, of counsel), for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiff, the village of Long Grove, appeals from summary judgment entered for the defendant, village of Buffalo Grove, on Long Grove's complaint in *quo warranto* arising out of competing annexations by the two villages. The court found as a matter of law that Long Grove did not have standing to bring the action. Long Grove contends (1) it had sufficient private interest to warrant leave to file its complaint in *quo warranto*; (2) genuine issues of material fact precluded summary judgment in favor of Buffalo Grove; and (3) Buffalo Grove's annexation ordinance was invalid.

On February 12, 1980, the village of Long Grove adopted ordinance No. 80—0—3, in which it expressed its desire to annex certain property and to hold a referendum thereon pursuant to section 7—1—2 of the Illinois Municipal Code (Code). (Ill. Rev. Stat. 1985, ch. 24, par. 7—1—2.) A certified copy of the ordinance was filed with the Lake County circuit clerk on February 14, 1980, under case No. 80 MC 4.

On February 5, 1986, Buffalo Grove gave notice of a public hearing to be held on February 24, 1986, to consider an annexation agreement and zoning for certain property known as the Fiore Nursery. A parcel known as the Seidl Nursery was also included in the proposed annexation. Notice of this hearing was given to the appropriate library and fire protection districts on February 7, 1986.

Long Grove's president *pro tem* was present at the Buffalo Grove public hearing on February 24, and he read a prepared statement expressing 10 areas of concern to Long Grove regarding the development proposed for the territory to be annexed by Buffalo Grove. At the conclusion of the hearing, the Buffalo Grove trustees approved the preparation of appropriate ordinances and annexation agreements to be considered at its March 3, 1986, meeting.

On that date in March, Buffalo Grove adopted an annexation ordinance which annexed property overlapping the property involved in

the Long Grove annexation proceeding filed in 1980. The Long Grove annexation proceedings had not at that time been either terminated or defeated. The Buffalo Grove annexation ordinance was specifically made subject to the terms and conditions of an annexation agreement approved on that same date, and the annexation ordinance was adopted pursuant to a petition for annexation executed by all of the owners of the property annexed and 51% of the electors residing thereon. Ill. Rev. Stat. 1985, ch. 24, par. 7—1—8.

On March 19, 1986, a hearing was held in case No. 80 MC 4 on objections to Long Grove's 1980 ordinance seeking to annex a portion of the property which had just been annexed by Buffalo Grove. At the conclusion of the hearing, the trial court sustained two categories of objections: those based on Long Grove's delay in acting on its ordinance, and those based on lack of contiguity of the proposed annexation. Accordingly, the court dismissed Long Grove's proceedings for annexation in case No. 80 MC 4. Long Grove appealed, and, although the case had not been decided at the time the parties here submitted briefs, we have recently affirmed the court's judgment in that case. (*In re Petition of Village of Long Grove* (1987), 156 Ill. App. 3d 1056.) We denied a petition for rehearing, and the matter is currently pending on a petition for leave to appeal to the supreme court.

On May 22, 1986, after dismissal of its annexation proceeding, Long Grove filed an application for leave to file a complaint in *quo warranto* challenging Buffalo Grove's annexation. *Inter alia,* Long Grove alleged in its complaint that it had priority over Buffalo Grove with respect to certain of the territory by virtue of its 1980 annexation ordinance. Buffalo Grove filed a response in opposition to the application, and Long Grove filed a reply. The court heard arguments and on July 10, 1986, granted Long Grove leave to file its complaint in *quo warranto*. Long Grove's complaint filed that same day was essentially a copy of its petition for leave to file and alleged that the Buffalo Grove annexation proceedings were null and void for numerous reasons. Buffalo Grove's motion for reconsideration of the court's ruling granting Long Grove leave to file its complaint in *quo warranto* was denied. Long Grove subsequently filed an amended complaint in *quo warranto* challenging the validity of Buffalo Grove's annexation, and Buffalo Grove answered.

After hearing on the parties' cross-motions for summary judgment and supporting memoranda, the court entered summary judgment for Buffalo Grove as noted above, finding that Long Grove did not have standing to prosecute the complaint in *quo warranto*.

The foremost issue to be decided is whether Long Grove had a

sufficient private interest to warrant leave to file its complaint in *quo warranto*. Long Grove contends it had a sufficient private interest in that (1) its annexation ordinance had not yet been defeated at the time Buffalo Grove enacted its ordinance, and the subsequent dismissal of its ordinance was then pending on appeal; (2) a substantial portion of the territory was within its comprehensive plan area; (3) a substantial portion of the territory was subject to a sewer subarea agreement between itself and Lake County; and (4) the territory was directly adjacent to and coterminous with the existing boundaries of the village of Long Grove.

Long Grove contends at the outset that the issue of its standing should not have been readdressed by the court and that once it filed its complaint in *quo warranto*, the burden shifted to Buffalo Grove to plead and prove compliance with all applicable statutes.

■■ ■ Although Long Grove is correct that the burden is on the defendant in an annexation case to prove compliance with the statute at the time the annexation ordinance was passed (*People ex rel. Hopf v. Village of Bensenville* (1971), 132 Ill. App. 2d 907, 910; *People ex rel. Karns v. Village of Caseyville* (1968), 99 Ill. App. 2d 60, 63), those cases do not hold that the court may not reconsider its ruling granting leave to file the complaint in *quo warranto*. It has been held that the court's discretion is not exhausted by the granting of leave to file, and that it has the discretion to set aside its order (*People ex rel. McMahon v. Davis* (1917), 209 Ill. App. 117, 126, *rev'd on other grounds* (1918), 284 Ill. 439) where it appears that leave was inadvertently or improperly granted under a misapprehension of the law or the facts. (*People ex rel. Naftzger v. Arnett* (1925), 317 Ill. 425, 427; *People ex rel. Outman v. Wanmer* (1916), 276 Ill. 460, 463.) A request to set aside the order granting leave to file has been acknowledged as the usual and approved method of testing the sufficiency of a complaint in *quo warranto* proceedings. *People ex rel. McMahon v. Davis* (1917), 209 Ill. App. 117, 126.

Although the parties here did argue the matter of whether leave to file should be granted, the issue unavoidably was renewed by virtue of Long Grove's complaint in *quo warranto* and the parties' cross-motions for summary judgment in that they raised the issue of the priority of Long Grove's 1980 annexation proceeding which, in turn, relates to the issue of standing.

■■ It appears from the record that the court originally granted Long Grove leave to file the complaint upon the court's belief that there were unresolved questions involved in Long Grove's pending appeal from its order in No. 80 MC 4 dismissing Long Grove's annexa-

tion ordinance, and that it would not be in the best interest of justice to deny leave to file the complaint. Upon further argument and briefs of the parties after the filing of the complaint, the court acknowledged that an element of the cause of action in *quo warranto* is that the plaintiff be a citizen having standing to raise the challenge to the action in question. Consistent with its earlier ruling in No. 80 MC 4, the court concluded that Long Grove's annexation ordinance pending since 1980 had been abandoned and was not a "priority" bar in any way to Buffalo Grove passing its ordinance on March 3, 1986, and, thus, it granted Buffalo Grove summary judgment. We conclude the issue of Long Grove's standing properly was before the court.

■ *Quo warranto* is defined as "[a]n extraordinary proceeding, prerogative in nature, addressed to preventing a continued exercise of authority unlawfully asserted." (Black's Law Dictionary 1131 (5th ed. 1979).) Originally, the action could be brought only to correct public wrongs, but the action now is used to correct wrongs done to either public or private rights. *People ex rel. Brooks v. Village of Lisle* (1974), 24 Ill. App. 3d 432, 434.

■ An action in *quo warranto* may be instituted by a citizen if he can (1) demonstrate that the Attorney General and the State's Attorney have been asked to proceed and have refused to pursue the matter and (2) show the invasion of a personal interest which is sufficiently distinct from the interest of the general public. (*People ex rel. City of North Chicago v. City of Waukegan* (1983), 116 Ill. App. 3d 88, 92; *Allen v. Love* (1983), 112 Ill. App. 3d 338, 341; Ill. Rev. Stat. 1985, ch. 110, par. 18—102.) A city whose territory is alleged to have been annexed by another city is a "citizen" who may institute a *quo warranto* proceeding. (*People ex rel. City of North Chicago v. City of Waukegan* (1983), 116 Ill. App. 3d 88, 92-93.) The private interest allegedly invaded must be directly, substantially, and adversely affected by actions sought to be challenged in the *quo warranto* proceeding (*People ex rel. First National Bank v. City of North Chicago* (1987), 158 Ill. App. 3d 85, 98; *People ex rel. Turner v. Lewis* (1982), 104 Ill. App. 3d 75, 77); the damage to that interest must then be occurring or certain to occur. (*Island Lake Water Co. v. La Salle Development Corp.* (1986), 143 Ill. App. 3d 310, 318; *People ex rel. Vanderhyden v. Village of Elwood* (1972), 5 Ill. App. 3d 590.) Public and private interests are often not mutually exclusive (*People ex rel. McCarthy v. Firek* (1955), 5 Ill. 2d 317, 323-25; *People ex rel. Gordon v. City of Naperville* (1975), 30 Ill. App. 3d 521, 523), and if a sufficient private interest is alleged, the fact that the wrong sought to be remedied may also have a public aspect would not be sufficient to require denial of a

citizen's request to bring a *quo warranto* action. *People ex rel. City of North Chicago v. City of Waukegan* (1983), 116 Ill. App. 3d 88, 92.

Long Grove contends its pending 1980 annexation proceeding, which had not been concluded, was sufficient in itself to give it standing to challenge Buffalo Grove's annexation. Although the 1980 annexation proceeding was dismissed, Long Grove contends its perfection of an appeal from that ruling pursuant to section 7—1—4 of the Code (Ill. Rev. Stat. 1985, ch. 24, par. 7—1—4) meant that its proceedings had not been completed or terminated and that Buffalo Grove's annexation proceedings were void *ab initio*, as set forth in *City of Countryside v. Village of LaGrange* (1962), 24 Ill. 2d 163.

We find Long Grove's reliance on *Countryside* misplaced. As noted above, a city whose territory is alleged to have been annexed by another city is considered to be a citizen who may institute a *quo warranto* proceeding. (*People ex rel. City of North Chicago v. City of Waukegan* (1983), 116 Ill. App. 3d 88.) Here, Long Grove had not yet annexed the territory, and, in fact, no action had been taken on its annexation ordinance from the time it was filed with the court on February 13, 1980, until a hearing was held on it on March 19, 1986, 16 days *after* Buffalo Grove adopted its ordinance annexing the territory on March 3. Long Grove ignores the corollary to the priority rule set forth in *Countryside* whereby the priority of an annexation proceeding may be lost due to unnecessary and unreasonable delay on the part of a petitioner.

In *Countryside*, in addition to determining that the village of La-Grange had no power or authority to effect an annexation of the same territory as long as Countryside's petition was on file and undefeated, the court also considered objections to Countryside's petition for annexation filed by owners of an 80-acre tract. The owners stated they had filed a petition on June 8, 1960, with the village of McCook asking that the village annex their property. They argued that since their petition to annex to McCook was still on file and undefeated, Countryside could not attempt on February 3, 1961, to annex the same property. Relying on *People ex rel. Village of Worth v. Ihde* (1961), 23 Ill. 2d 63, the court found that because McCook had taken no action on the owners' petition for annexation for an eight-month period, its long delay and inaction deprived it of any priority it might have acquired over the territory in question. Jurisdiction was similarly found to have been abandoned in *Ihde*, where the delay was five months.

■ In light of these authorities, we must agree with the court that Long Grove abandoned any priority over the territory in question long before the Buffalo Grove annexation on March 3, 1986. Accord-

ingly, we can afford Long Grove no standing as a city whose territory has been annexed by another.

Long Grove contends it otherwise had standing, however, because the territory was within the area of its comprehensive plan and a sewer subarea agreement between itself and Lake County, and because the territory was directly adjacent to and coterminous with the existing boundaries of the village of Long Grove.

■ We find the presentation of Long Grove's argument as to the above points deficient under Supreme Court Rule 341 (107 Ill. R. 341(e)(7)) in that the majority of its contentions are not supported by citation of authority or the pages of the record relied upon. It is well settled that such unsupported contentions may be considered waived. (*Mead v. Board of Review* (1986), 143 Ill. App. 3d 1088; *In re Marriage of Anderson* (1985), 130 Ill. App. 3d 684.) It is also well settled that mere assertions in a brief cannot serve as a substitute for a proper record. (*City of Chicago v. Hutter* (1978), 58 Ill. App. 3d 468.) To the extent Long Grove's contentions are either properly supported or are responded to by Buffalo Grove, we will consider them.

Buffalo Grove disputes that Long Grove's interest in comprehensive planning and zoning for territory outside its municipal boundaries is a private interest which would permit Long Grove to bring a *quo warranto* action on its own relation.

■ Planning and zoning for territory adjacent to the boundaries of a municipality has been found to be a *governmental* rather than private function which fails to qualify a municipality as a " 'citizen having an interest in the question on [its] own relation.' " (*People ex rel. Brooks v. Village of Lisle* (1974), 24 Ill. App. 3d 432, 435.) "Where matters of purely public import touching no private interest[s] are involved, only [the Attorney General and the State's Attorney] can qualify as property party plaintiffs." (*People ex rel. Brooks v. Village of Lisle* (1974), 24 Ill. App. 3d 432, 434.) The density and proposed uses of the development proposed for this territory outside Long Grove's municipal boundaries are matters of purely public import and not something which touches the expressed private interest of the village of Long Grove in lower density residential development with no light industry or commercial uses.

Cases cited by Long Grove in support of its contention that the "modern trend" is to allow municipalities to contest actions of other governmental bodies which substantially impact on them are inapposite in that they did not involve the standing required of a citizen seeking to bring a *quo warranto* action. In none of the cases did the plaintiff seek to challenge the annexation of the property but, rather,

the use of the property. In *City of West Chicago v. County of Du Page* (1979), 67 Ill. App. 3d 924, the court found West Chicago had standing to seek a declaration of invalidity of an ordinance of the County of Du Page which granted a certain special use permit. The city alleged that the property in question had been classified in the city's master plan as R-2 single-family residential; that it was within 1½ miles of the West Chicago border; and that the special use ordinance permitting a garage facility conflicted with the city's master plan. The court determined from these allegations that West Chicago had a valid *governmental* interest in the subject of the litigation sufficient to challenge the zoning ordinance. 67 Ill. App. 3d 924, 926.

Similarly, in *Forestview Homeowners Association, Inc. v. County of Cook* (1974), 18 Ill. App. 3d 230, the village of Northbrook was allowed to intervene in the plaintiff's suit seeking an injunction and declaration of invalidity of a rezoning ordinance and a special use permit granted by the board of county commissioners of Cook County. The property involved was located within 1½ miles of Northbrook's territorial limits. The court found Northbrook was properly given leave to intervene where its ordinances reflected a valid *governmental* interest in the subject of litigation. 18 Ill. App. 3d 230, 237.

In *Village of Barrington Hills v. Village of Hoffman Estates* (1980), 81 Ill. 2d 392, Barrington Hills and South Barrington's complaint challenging the adoption by Hoffman Estates of particular zoning ordinances in connection with plans to develop certain previously unincorporated property as an open-air music theatre (now known as Poplar Creek) was dismissed on the basis they lacked standing to maintain the action for injunctive relief. The dismissal was affirmed on appeal, but was subsequently reversed and remanded by the supreme court. Pursuant to zoning ordinances, both Barrington Hills and South Barrington had adopted comprehensive plans which would restrict the use of the land in the vicinity of the subject property to low density single-family residences and to agricultural uses. Based on allegations in the complaint relating to the impact the theatre would have on them, the supreme court determined the villages had a *real* interest in the subject matter of the controversy sufficient to confer standing, and had demonstrated that they would be substantially, directly and adversely affected in their corporate capacities. 81 Ill. 2d 392, 397-98.

■■ Accordingly, none of these authorities support Long Grove's position on this matter, and we find Long Grove had no standing in *quo warranto* by virtue of its comprehensive plan.

Long Grove's further contention it had standing because a sub-

stantial portion of the territory was within a sewer subarea covered by an agreement between itself and Lake County is without merit. Long Grove asserts the agreement gives it the right to consent or not to consent to sewer connections to the Lake County system within the subarea, and that the project planned to be developed by virtue of the Buffalo Grove annexation "is dependent upon such a Lake County sewer connection." Long Grove contends the annexation "will simply promote one more piece of litigation involving the right of Long Grove to consent or not to the sewer connection." Long Grove provides no record reference or citation of authority in support of its contentions, and the issue may be considered waived.

As Buffalo Grove points out, Long Grove's interest in sewage disposal outside its municipal boundaries is no more of a private interest than is its interest in extraterritorial zoning. It has been judicially noticed that sanitary and storm sewers are matters which fall within the scope of a village's police powers (*Forestview Homeowners Association, Inc. v. County of Cook* (1974), 18 Ill. App. 3d 230, 238, n.4), the exercise of which is a governmental function. (*Merrill v. City of Wheaton* (1942), 379 Ill. 504, 509.) Further, although the agreement afforded Long Grove consent power over any direct connection to the county system by any person, firm or corporation "within the legal boundary" shown on the exhibit map attached thereto, the county reserved to itself "the right to contract with other persons, natural or corporate, private or public, to perform services similar to those to be performed under this agreement or other services; provided, however, that the county will do nothing under any such contract which will impair the rights or infringe on the county's ability to serve the village." Consequently, it appears Long Grove may have limited, if any, consent power over any future contract between the county and Buffalo Grove for similar sewage services.

We find no merit in Long Grove's argument that its comprehensive plan and sewer subarea agreement are "private interests onto [sic] Long Grove and Long Grove alone" because no one else cares about their validity or application. A similar tack taken in *People ex rel. Brooks v. Village of Lisle* was rejected where, although the court acknowledged the city of Wheaton, in a certain sense, had an interest not common to the general public, Wheaton's interest in planning and zoning for adjacent territory outside its municipal boundaries was nonetheless not the fundamental private interest contemplated in the origin and development of *quo warranto*. (*People ex rel. Brooks v. Village of Lisle* (1974), 24 Ill. App. 3d 432, 435.) Although Long Grove distinguishes *Brooks* on the basis there is no mention of

Wheaton's having adopted a formal comprehensive plan, such a plan nonetheless is a governmental function, not a private interest, as discussed above.

As Buffalo Grove also points out, Long Grove's complaint in *quo warranto* is totally silent as to any then-occurring or certain to occur direct, substantial or adverse effect on it as a result of the Buffalo Grove annexation. Such present or certain damage caused by the action sought to be challenged in the *quo warranto* proceeding is a condition precedent to the filing of the complaint. *People ex rel. First National Bank v. City of North Chicago* (1987), 158 Ill. App. 3d 85, 99.

Long Grove's further contention that it had standing because the territory was directly adjacent to and coterminous with its existing boundaries is unsupported by any authority, or argument, beyond the assertion that the impact of the development will be felt "first and foremost by Long Grove and its residents." We consider it waived.

■■ Long Grove argues that in deciding whether to grant leave to file a complaint in *quo warranto*, the court should consider whether facts are disputed and new and doubtful questions of law are presented (*People ex rel. Koplin v. Village of Hinsdale* (1976), 38 Ill. App. 3d 714, 718); look to the allegations and the nature of the legal deficiency alleged in the proposed complaint as well as the application (*People ex rel. Weber v. Burson* (1923), 307 Ill. 533, 536-37); consider the public interest to be served by the filing of the complaint in *quo warranto* (*People ex rel. Zimmerman v. Jones* (1923), 308 Ill. 246, 249); and should consider the policy of and the necessity for the remedy sought (*People ex rel. Weber v. Burson* (1923), 307 Ill. 533, 536). Without a doubt, these matters may be considered in the sound discretion of the court, but they are to be considered "in addition to the statutory requirements" (*People ex rel. Koplin v. Village of Hinsdale* (1976), 38 Ill. App. 3d 714, 718), one of which is that the party bringing the action have a sufficient private interest.

■■ In sum, we conclude that the court did not err in finding that Long Grove did not have standing to prosecute the action in *quo warranto*. In light of this conclusion, we do not consider Long Grove's further arguments concerning the invalidity of the Buffalo Grove annexation ordinance. Much like the situation in the *Koplin* case (*People ex rel. Koplin v. Village of Hinsdale* (1976), 38 Ill. App. 3d 714, 718-19), the parties here filed legal memoranda and argued the issues raised in Long Grove's complaint for *quo warranto*. The court here did not rule on these numerous issues, however, finding as a matter of law that standing was lacking. When an issue presents

only a question of law, it is an appropriate issue for determination by means of summary judgment. (*Old Second National Bank v. Aurora Township* (1987), 156 Ill. App. 3d 62, 66; *Economy Fire & Casualty Co. v. Kubik* (1986), 142 Ill. App. 3d 906.) Long Grove's assertion that genuine issues of material fact existed which precluded summary judgment in favor of Buffalo Grove is unsupported by either explanation or authority as to why such issues are material. In such an instance, a trial court's grant of summary judgment has been affirmed. *Williams v. Danley Lumber Co.* (1984), 129 Ill. App. 3d 325.

For the reasons set forth above, the judgment of the circuit court of Lake County is affirmed.

Judgment affirmed.

DUNN and WOODWARD, JJ., concur.