THE VILLAGE OF MUNDELEIN, Plaintiff-Appellee, v. THE VILLAGE OF LONG GROVE, Defendant-Appellant.

Second District   No. 2—90—0822

Opinion filed October 10, 1991.

John M. Mullen, of Libertyville, for appellant.

Donald M. Lonchar, Jr., Thomas A. Morris, Jr., and Thomas K. Gerling, all of Brydges, Riseborough, Morris, Franke & Miller, of Waukegan (Charles F. Marino and C. Dirk McElravey, of counsel), for appellee.

Adeline J. Geo-Karis & Associates, of Zion, Berle L. Schwartz, of Highland Park, and Bruce A. Slivnick, of Deerfield (Adeline Geo-Karis, of counsel), for Village of Vernon Hills.

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, the Village of Mundelein (Mundelein), challenged an annexation by defendant, the Village of Long Grove (Long Grove), through a complaint in *quo warranto*. The territory annexed by Long Grove was substantially the same as territory annexed also by Mundelein. The circuit court of Lake County granted Mundelein's motion for summary judgment. Long Grove appeals, contending that summary judgment in favor of Mundelein was error because (1) the court failed to examine the validity of the Mundelein annexations, (2) Mundelein's annexation ordinances were void, and (3) Long Grove's annexation was valid. We affirm.

In March 1987 a petition for annexation of their property was filed with Mundelein by the trustee/owners and beneficiary/owner of a parcel of land, known as the Livaditis parcel, located in unincorporated Lake County, near the intersection of Routes 45 and 83. Subsequently, the Livaditis parcel was the subject of public hearings regarding zoning, special use, and an annexation agreement for the property. The parcel was also discussed at a public meeting of the Mundelein Village Board on November 21, 1987.

On December 31, 1987, and again on January 2, 1988, Long Grove published a notice in the Chicago Tribune that on January 12, 1988, it would forcibly annex approximately 56.7 acres of property situated at or near the intersection of Routes 45 and 83. The territory Long Grove proposed to annex included the Livaditis parcel.

Before Long Grove could act on its proposed annexation, owners of 11 of the parcels in the area to be annexed filed petitions for annexation with Mundelein. Three petitions were filed on January 8, 1988, and eight were filed on January 11, 1988.

On January 12, 1988, Mundelein gave notice to other pertinent taxing districts and officials that, at a meeting on January 23, 1988, the Mundelein Village Board would consider annexation of the parcels for which it had received annexation petitions. That day Mundelein also notified Long Grove in writing both that it was actively considering annexation of the Livaditis parcel and that it had received petitions for annexation of 11 other parcels. Mundelein requested Long Grove to defer any action to annex those properties.

The same evening, January 12, 1988, Long Grove adopted ordinance No. 88—0—1, which annexed 56.7 acres of property. The acreage annexed included the Livaditis parcel, the 11 parcels whose owners had requested to be annexed by Mundelein, and a segment of

Commonwealth Edison (Edison) right-of-way. With the exception of one area the annexed territory was surrounded by the Villages of Long Grove, Mundelein, and Vernon Hills. The exception was 210 feet in length and occurred where the Edison right-of-way continued on beyond Long Grove's annexation territory. After passing through Mundelein, the unincorporated right-of-way ran south through Vernon Hills. Long Grove's plat of annexation included a part of the section of right-of-way that passes through Vernon Hills and designated it as parcel 10 of the area to be annexed. (See Fig. 1.) A short distance south of parcel 10 the Edison property was incorporated into Vernon Hills. However, between the south edge of parcel 10 and the point where Edison's land became part of Vernon Hills there lay a strip of right-of-way 830 feet long and 210 feet wide. This parcel was not included by Long Grove in its annexation. The property consisted of 4.0048 acres and was surrounded to the south, west and east by Vernon Hills. See Fig. 1, "Omitted Parcel."

At a public meeting of the Village Board on January 23, 1988, Mundelein adopted ordinance No. 88—1—8, which annexed the 11 parcels the Village had been asked to annex. Subsequently, the owners of the Livaditis parcel filed an amended petition for annexation, and, on February 20, 1988, Mundelein annexed the Livaditis property.

Between March and May 1988 Mundelein, Vernon Hills, and Commonwealth Edison all filed applications for leave to file complaints in *quo warranto* challenging Long Grove's annexation. The applications were consolidated, all three applicants were granted the requested leave, and, by the end of November, the parties' *quo warranto* complaints were filed. Long Grove then also applied for leave to file a complaint in *quo warranto*, but its request was denied. Long Grove's subsequent petition for rehearing was also denied, as was its request for leave to file a counterclaim in *quo warranto*.

Long Grove filed answers to all three complaints. Its answer to Mundelein's complaint asserted the invalidity of Mundelein's annexation ordinances as an affirmative defense. Each plaintiff then filed a motion for summary judgment, and Long Grove responded with a summary judgment motion of its own, based solely on the alleged invalidity of Mundelein's ordinance.

Upon finding that Long Grove's annexation violated statutory requirements, the trial court granted plaintiffs' and denied defendant's respective motions for summary judgment. In a final judgment order the court declared Mundelein's annexation to be valid, held Long Grove's annexation ordinance No. 88—0—1 to be null and void, and

declared that Commonwealth Edison's right-of-way remained in unincorporated Lake County. Long Grove then timely filed this appeal.

While a final judgment order was ultimately filed in this case, the trial court resolved the dispute after the parties filed and argued motions for summary judgment. A motion for summary judgment should be granted where the pleadings, depositions, admissions and affidavits on file demonstrate that no genuine issue as to any material fact remains to be resolved and the movant is entitled to judgment as a matter of law. (*Logan v. Old Enterprise Farms, Ltd.* (1990), 139 Ill. 2d 229, 233-34; *People ex rel. Village of Buffalo Grove v. Village of Long Grove* (1990), 199 Ill. App. 3d 395, 404.) Long Grove contends that neither requirement for summary judgment was satisfied.

Long Grove initially attacks the trial court's refusal to allow a challenge to the validity of Mundelein's annexation ordinance. The court did not permit Long Grove to raise the issue in either a separate *quo warranto* complaint or as a counterclaim in Mundelein's *quo warranto* action. While Long Grove asserted the invalidity of Mundelein's ordinance in the form of affirmative defenses to Mundelein's complaint, and again in its motion for summary judgment, the trial court refused to address the question. The court rebuffed Long Grove's efforts for two reasons. First, in its order granting Mundelein's application for leave to file a *quo warranto* complaint, the court found that Mundelein's annexation proceeding enjoyed priority over that of Long Grove. Second, in its memorandum opinion granting summary judgment for plaintiffs, the court noted that, in the *quo warranto* proceeding against it, Long Grove had to justify its own annexation before it could challenge Mundelein's annexation proceedings. However, the court had found Long Grove's annexation to be void because it violated the statutes controlling forcible annexations. Accordingly, the court determined that the validity of Mundelein's annexation was not at issue. Long Grove asserts that the court erred both in finding that Mundelein's proceedings had priority over its own and in holding Long Grove's annexation to be null and void.

As we read it, Long Grove's initial argument is that Mundelein's annexation proceedings are not entitled to priority because the annexation petitions presented to Mundelein suffered from various defects. Long Grove complains that priority could not attach if the enabling statutes were not followed. This argument is without merit.

■ Priority, as the term is applied to competing annexations, is not dependent on the correctness or validity of annexation petitions. Rather, priority refers to the well-established concept that multiple

overlapping annexation proceedings must generally be considered and completed in the order in which they were initiated. (*City of Country-side v. Village of La Grange* (1962), 24 Ill. 2d 163, 166; *In re Petition of Village of Long Grove to Annex Certain Territory* (1987), 156 Ill. App. 3d 1056, 1059.) Long Grove adopted its ordinance pursuant to section 7—1—13 of the Illinois Municipal Code (Ill. Rev. Stat. 1987, ch. 24, par. 7—1—13), which allows a municipality forcibly to annex property by the passage of an ordinance. Mundelein's annexation proceeded pursuant to section 7—1—8 of the Illinois Municipal Code (Ill. Rev. Stat. 1987, ch. 24, par. 7—1—8), which provides for annexation at the request of landowners and electors residing in the territory to be annexed.

■■ ■ Section 7—1—8 voluntary annexation proceedings are initiated by the filing of petitions by the landowners. (*People ex rel. Village of Worth v. Ihde* (1961), 23 Ill. 2d 63, 67-68; *People ex rel. Village of Buffalo Grove v. Village of Long Grove* (1988), 173 Ill. App. 3d 946, 951.) Section 7—1—13 forcible annexations are initiated by passage of an annexation ordinance. (*People ex rel. City of Leland Grove v. City of Springfield* (1988), 166 Ill. App. 3d 943, 946-49; *Village of Buffalo Grove*, 173 Ill. App. 3d at 951.) In this case it is undisputed that petitions for voluntary annexation were filed with Mundelein in March 1987 and on January 8 and 11, 1988, and that Long Grove did not adopt its ordinance annexing the overlapping territory until January 12, 1988. Accordingly, the trial court correctly held that Mundelein's annexation enjoyed priority over Long Grove's proceedings.

Priority in the present context means only that Mundelein was entitled to have its claims as to the overlapping territory considered and resolved before the court could consider the matter of Long Grove's claims. The validity of Mundelein's proceedings could be raised by a proper party during that consideration. But to assert that the invalidity of the ordinance deprived plaintiff of priority is to put the cart before the horse. In other words, Mundelein had to invoke successfully the aid of the court before its ordinance could be attacked, and it had to have priority in order to secure properly the aid of the court.

■ The argument made here by Long Grove was also made in *Village of Kildeer v. Village of Lake Zurich* (1988), 167 Ill. App. 3d 783. Lake Zurich argued that Kildeer did not have standing to seek relief from an overlapping annexation in a *quo warranto* suit because Kildeer's own annexation ordinances were invalid at the outset. We noted that this contention was raised in response to the *quo warranto* complaint and indicated that standing could not be made to depend on resolution of an issue raised within the *quo warranto* action itself.

While Long Grove casts its argument in terms of priority rather than standing, the result Long Grove seeks is the same. Long Grove, like Lake Zurich in *Kildeer*, seeks to prevent plaintiff from proceeding with its *quo warranto* action. However, Mundelein's proceedings enjoy priority, and that priority gives Mundelein, just as it did plaintiff in *Kildeer*, standing to challenge its adversary in *quo warranto*. While a municipality may ultimately lose its bid to annex property because of various flaws in its proceedings, if it has priority it will not lose its opportunity to be heard first because of those flaws.

Long Grove challenges also the trial court's determination that its ordinance was null and void. The court found that Long Grove's annexation did not comport with the statutory requirements and, therefore, refused to recognize Long Grove's annexation. We find no error.

■ Long Grove proceeded under section 7—1—13, which states in pertinent part, "[w]henever any unincorporated territory containing 60 acres or less, is wholly bounded by (a) one or more municipalities, *** that territory may be annexed by any municipality by which it is bounded in whole or in part" (Ill. Rev. Stat. 1987, ch. 24, par. 7—1—13). Territory sought to be annexed pursuant to this section of the statute must be bounded on all sides as called for by the statute, and any ordinance annexing territory not so bounded is a nullity and of no legal effect. (*People ex rel. Universal Oil Products Co. v. Village of Lyons* (1948), 400 Ill. 82, 87 (construing Ill. Rev. Stat. 1947, ch. 24, par. 7—11, predecessor of Ill. Rev. Stat. 1987, ch. 24, par. 7—1—13).) It is not disputed that the territory annexed by Long Grove is surrounded by Mundelein, Long Grove, and Vernon Hills, except for a 210-foot-wide span where the annexed property meets a strip of land owned by Commonwealth Edison. Mundelein and Commonwealth Edison assert that the Edison property is unincorporated and that the territory to be annexed, therefore, does not meet the requirement that such territory be wholly bounded by one or more municipalities. Long Grove insists that the strip of land in question is incorporated. Alternatively, Long Grove urges that if there is a gap in the bounding of its annexation, it is *de minimis* and should not defeat its ordinance.

Regarding Long Grove's first argument, it is clear from the court's memorandum order that it found the Edison parcel to be unincorporated. While the order does not set forth the basis for the court's conclusion, the record presented to the court reflects the following uncontested facts. The property immediately adjacent to the strip of land owned by Edison, to both the east and the west, is owned by the Fiore family. In 1960 the Fiores voluntarily annexed

their property to the Village of Indian Creek. The legal description of the land annexed included the strip belonging to Edison. According to the unrefuted affidavit of James J. Bruen, Edison land management supervisor, Edison never petitioned for annexation of the strip to Indian Creek, and, if it was annexed, the annexation was accomplished without Edison's knowledge or consent.

Subsequently, in 1986, the Fiore family petitioned the court to disconnect their property from Indian Creek, pursuant to section 7—3—6 of the Illinois Municipal Code (Ill. Rev. Stat. 1985, ch. 24, par. 7—3—6). The Fiores and the Village of Indian Creek entered into a settlement agreement in 1987, and, as part of a settlement order which incorporated the agreement, all of the territory that had been annexed in 1960, including Edison's land, was disconnected. James Bruen's affidavit indicates that Edison was not a party to and had no knowledge of either the disconnection proceedings or the settlement reached by the parties. However, it is stated in the affidavit that Edison "does not object to, and agrees with" the disconnection of its property from Indian Creek. After the disconnection the Fiore parcels, but not the Edison strip, were annexed to Vernon Hills. The Edison property then lay one-quarter to one-half mile away from the corporate limits of Indian Creek.

Long Grove takes the position that the settlement order entered in the Fiore disconnection proceedings was void as to the Edison parcel since Edison was never made a party to the proceedings and the court, therefore, lacked both subject-matter and personal jurisdiction as to Edison and its property. Accordingly, Long Grove insists that the Edison land was not disconnected but remained part of Indian Creek and, as such, could not be annexed by Long Grove in its 1988 annexation ordinance. Furthermore, since Edison's land was part of Indian Creek, the territory to be annexed was totally surrounded by other municipalities. Plaintiffs respond that Long Grove does not have standing to attack the 1986 disconnection proceedings because it was not a party to those proceedings. While it is true, as Long Grove emphasizes, that a void judgment can be attacked at any time, either directly or collaterally (*People v. Pine* (1989), 129 Ill. 2d 88, 120), the order challenged here was not rendered void for lack of personal jurisdiction and is not vulnerable to Long Grove's challenge.

■ The record discloses that the relevant order resulted from a settlement agreement between the Fiores and Indian Creek. It was designated a "Settlement Order" and incorporated the parties' agreement. An agreed or consent order is tantamount to a contract. (*Board of Education of Community High School District No. 218 v. Falk*

(1972), 8 Ill. App. 3d 696, 699.) Further, a judgment by consent derives its validity from the consent of the parties, not from adjudication by the court, and is treated as a contract. (*Cwik v. Condre* (1955), 4 Ill. App. 2d 380, 384.) A consent judgment, which constitutes a mere recitation of the parties' settlement agreement (*Clark v. Standard Life & Accident Insurance Co.* (1979), 68 Ill. App. 3d 977, 983), is an independent undertaking which may take precedence over pleadings and evidence and may even delineate and limit the relief to be granted (*Filosa v. Pecora* (1974), 18 Ill. App. 3d 123, 127). In light of these principles, Long Grove's insistence that the disconnection order was void as to Commonwealth Edison's property is not persuasive.

■ Since the settlement agreement between the Fiores and Indian Creek is to be treated as a contract, the validity of the court's order is a matter of the consent of the parties and is not dependent upon whether the court had jurisdiction over the parties. In essence, both the Fiore and Edison properties were disconnected, not as a result of a judicial determination that disconnection was proper and permissible, but because the Fiores and Indian Creek agreed that the property should be disconnected. The court order memorialized and confirmed their agreement and made it effective with regard to the legal status of the property. In no sense was disconnection imposed upon the property or the parties by the court.

It is true that, since Edison was not a party to the disconnection proceedings, it was not bound by the settlement agreement at the time it was executed and the court order was not enforceable against Edison. However, this is not the same as saying the order of the court was void for lack of jurisdiction and therefore subject to a collateral attack. At best, the order was voidable at Commonwealth Edison's option. That is, since its property was affected Edison had the choice of either challenging or ratifying the settlement agreement and order. A party named in a contract may, by its acts and conduct, indicate assent to the contract terms and become bound by the contract provisions even though the party has not signed the contract. (*Landmark Properties, Inc. v. Architects International-Chicago* (1988), 172 Ill. App. 3d 379, 383.) In fact, the record reveals that Edison did subsequently assent to the terms of the settlement agreement. Prior to that assent, however, the validity and binding effect of the settlement order, as to Edison and its property, were dependent on Edison itself, not the jurisdiction of the court over Edison. Since the order was voidable, rather than void, it was not subject to a collateral attack by Long Grove. See *Chicago Title & Trust Co. v. Village of Mount Prospect* (1987), 160 Ill. App. 3d 851, 856.

Even if we were to find the settlement order void as to the Edison property, we would still find Long Grove's position to be questionable. The annexation statute plainly calls for the inclusion of all adjacent unincorporated areas in an involuntary annexation. As will be discussed shortly, the exclusion of such areas is contrary to the purpose of the statute. The Edison property consists of less than five acres and would have been easy enough for defendant to include in its annexation. We recognize Long Grove's position that the reason it excluded those few acres was because they were already part of Indian Creek. We are mindful also, however, of the suggestion in the record that inclusion of the property may have resulted in an annexation territory of more than 60 acres and thus may have precluded altogether the forcible annexation by Long Grove. In any event it appears to us that Long Grove is not concerned with whether the property is part of, specifically, Indian Creek. Nor is it concerned with how the property is affected by an incorporated, as opposed to unincorporated, status. Rather, defendant is concerned only that the property be incorporated for incorporation's sake. It does not matter where it is incorporated but only that it *be* incorporated since Long Grove did not include it in its annexation. Long Grove does not invoke purported flaws in the disconnection order to protect any of its present interests but to avoid noncompliance with the statutory requirement that land annexed be "wholly bounded" by other municipalities. At best, Long Grove's interest in the validity of the disconnection order may be characterized as remote.

■■ Moreover, Long Grove's argument that Edison's property remained incorporated in Indian Creek leads to an absurd outcome. The Fiores sought disconnection under section 7—3—6 of the Illinois Municipal Code (Ill. Rev. Stat. 1985, ch. 24, par. 7—3—6), which provides that disconnection of territory may "not result in the isolation of any part of the municipality from the remainder of the municipality." Yet, this is precisely the result which must be acknowledged if we accept Long Grove's position. Like a small island, the Edison property lies at least a quarter mile distant from the Indian Creek village limits and is surrounded on three sides by Vernon Hills and on the remaining side by unincorporated Lake County. It is evidently ignored by Indian Creek. We do not think that such an incongruous state of affairs should be supported or perpetuated. Just as the disconnection statute should be given a sensible, intelligent, and reasonable meaning (*Indian Valley Golf Club, Inc. v. Village of Long Grove* (1985), 135 Ill. App. 3d 543, 550), we think an agreement to disconnect must bring about a sensible, intelligent, and reasonable result. In this regard, it is

noteworthy that, as our supreme court recently observed, the disconnection statutes have consistently been given a liberal construction in favor of disconnection. (*Harris Trust & Savings Bank v. Village of Barrington Hills* (1989), 133 Ill. 2d 146, 154.) Absent some complaint from Commonwealth Edison, a challenge to the disconnection of Edison's land must be greeted with skepticism.

We note also that the plat of annexation attached to Long Grove's annexation ordinance shows the Villages of Long Grove, Mundelein, and Vernon Hills bordering the territory to be annexed. Nowhere, including the southern boundary, does the plat show Indian Creek abutting the annexation territory. Thus, there is some indication that, at the time it adopted its annexation ordinance, Long Grove itself did not think the territory it sought to annex bordered Indian Creek at any point.

■ Collectively, the points just discussed are persuasive that Long Grove would not have had standing to challenge the settlement order collaterally, even if it was void. Furthermore, we think these points are responsive to another approach employed by Long Grove. In its reply brief, and again at oral argument, defendant urged that it did not ask the trial court, and does not ask this court, to rule specifically that the disconnection is void as to the Edison parcel or to determine the exact status of that parcel. Rather, defendant requests only that we hold that it was not required to include the parcel in its annexation. The implication of this request is that defendant believes the status of the Edison land is not critical to its annexation. We find this belief to be misplaced.

After consideration of all the circumstances, we are of the opinion that it was sufficiently clear that Edison's land either was disconnected or should be treated as disconnected, and thus unincorporated, that defendant should be held to the requirements set forth in the statute for including unincorporated property in its involuntary annexation. As we explain below, we do not consider the exclusion of Edison's property to be *de minimis* in nature, either. We decline to rule that Long Grove was not required to include the Edison parcel.

■ Long Grove urges in its supplemental brief that the order is binding only on the parties and, as to all others, the Edison property is still incorporated in Indian Creek. As we have discussed, this argument yields an unreasonable and unacceptable result. It also does not take into account the statutory disconnection procedures. The Fiores petitioned for disconnection pursuant to section 7—3—6 of the Illinois Municipal Code (Ill. Rev. Stat. 1985, ch. 24, par. 7—3—6). This section states that if the court finds the petition to be accurate and that the

territory is entitled to disconnection "it shall order the specified land disconnected from the designated municipality." Although the parties were ultimately able to reach an agreement regarding disconnection, the statutory process was already underway, and the actual, legal disconnection could be accomplished only in accordance with that process, *i.e.*, through an order of the court. In our view the court's order effectively disconnected all of the territory included in the petition. While the order may have been voidable as to Edison, in the absence of a challenge by Edison the land was disconnected and, thus, unincorporated as to all third parties as well as the parties involved in the court disconnection proceedings.

Long Grove next urges that, even if the territory it sought to annex is not totally bounded by one or more municipalities, the gap is *de minimis* and does not affect the validity of its annexation. Defendant focuses on the affidavit of its surveyor which establishes that the area not bounded constitutes less than 1.5% of the perimeter of the total annexation. Plaintiffs, on the other hand, strongly urge that the gap should not be considered *de minimis* and assert that Long Grove stopped short of annexing the last 830 feet of the Edison right-of-way only in order to assure the viability of its annexation.

Plaintiff points out that section 7—1—13 of the Illinois Municipal Code (Code) (Ill. Rev. Stat. 1987, ch. 24, par. 7—1—13) limits forcible annexations to territory containing 60 acres or less and that section 7—3—6 of the Code (Ill. Rev. Stat. 1987, ch. 24, par. 7—3—6) allows an owner or owners of 20 or more acres to seek disconnection. Plaintiffs claim that if Long Grove had annexed the additional four acres of right-of-way, the total annexation would have been more than 60 acres and the total Edison property annexed would have been over 20 acres. Thus, according to plaintiff, Long Grove excluded Edison's property in order to comply with the statutory acreage limitation and to deter Edison from initiating proceedings to disconnect its property from Long Grove. Long Grove responds that the amount of acreage involved raises questions of fact which could not be resolved in a motion for summary judgment. While we agree that plaintiffs' argument prompts factual issues, we do not believe those issues need to be reached in order to resolve the question of whether the gap in the territory to be annexed was *de minimis*.

Plaintiffs have cited, and we have found, only one case directly on point on the issue of *de minimis* errors in annexation proceedings. In *People ex rel. Chicago Title & Trust Co. v. City of Des Plaines* (1966), 76 Ill. App. 2d 243, the city annexed territory pursuant to section 7—1—13. The territory was completely encircled by the city except for a

49-foot gap where it met unincorporated property. The gap equaled eight-tenths of 1% of the total boundary between the city and the proposed annexation. The court found the gap to be trivial and not sufficient to defeat the "wholly bounded" requirement of the statute.

We do not find *City of Des Plaines* to be dispositive of the matter before us. First of all, it is noteworthy that the court in *City of Des Plaines* pointed out that the plaintiff did not appear to contend that the gap alone prevented the property from being "wholly bounded." In fact, the primary issue in the case was whether the city could annex a railroad right-of-way which lay between the city and one of four sides of the property to be annexed. Without the right-of-way the annexation territory was not wholly bounded by the city. Plaintiffs here, on the other hand, direct our full attention to the effect of the gap in Long Grove's annexation boundary.

We perceive that, in and of itself, the gap in this case is not significantly greater, in terms of the ratio of gap to overall boundary, than that in *City of Des Plaines*. However, we do find it significant that, as noted by the court, the 49 feet in *City of Des Plaines* were inadvertently omitted in the course of the city's annexation of other territory adjoining the southern boundary of the property in question. In other words, it appears the city intended to annex an island of property which it thought was already encompassed within itself. In contrast, Long Grove intentionally omitted the 210 feet from its annexation on the ground that the adjoining section of the Edison right-of-way was already incorporated—a ground which we have determined to be unfounded.

There was no inadvertence here stemming from prior Long Grove annexations. On the contrary, the point where the gap occurs is the southern tip of a long, narrow strip of right-of-way, which extends south from the bulk of the annexation territory. The strip to be annexed, as well as the parcel omitted, is surrounded to the east and west by the Village of Vernon Hills. (See Fig. 1.) The 210-foot break in its proposed boundary, which Long Grove would have us declare *de minimis*, constitutes the entire southern edge of the territory Long Grove seeks to annex. These facts, unlike those in *City of Des Plaines*, do not lend themselves to the conclusion that the gap in Long Grove's proposed boundary is *de minimis*.

We are reenforced in our conclusion by *Spaulding School District No. 58 v. City of Waukegan* (1960), 18 Ill. 2d 526, where the city sought an annexation by referendum. The proposed annexation would have left an unincorporated island surrounded by the city and the area sought to be annexed. Although the issue in *Spaulding* revolved around

contiguity, the court discussed section 7—11 (Ill. Rev. Stat. 1957, ch. 24, par. 7—11), the predecessor of section 7—1—13. According to the court the "wholly bounded" language of the section reflected an acknowledgement by the legislature that unincorporated islands of property existed and provided for the ultimate absorption of such areas into a municipality. While the court's remarks constitute *dicta*, we nevertheless find them persuasive that the legislature devised and intended section 7—1—13 to be a mechanism whereby relatively small, unincorporated parcels, left over after the incorporation of surrounding property, could be easily annexed by a contiguous municipality. Implicit in the "wholly bounded" language used by the legislature is the intent that such annexations should swallow up all of the unincorporated land sandwiched in amongst already existing municipalities. Thus, it appears the "wholly bounded" language serves a distinct purpose and should be given full effect. Accordingly, under the circumstances of this case, we decline to disregard the lack of compliance with the statute on the *de minimis* grounds urged by Long Grove.

Having found that Mundelein's annexation proceedings had priority and that Long Grove's annexation was void, the trial court concluded that the validity of Mundelein's annexation was not at issue. Long Grove steadfastly insists that the court's failure to examine Mundelein's proceedings was error. In its brief Long Grove has argued this issue primarily in the context of priority, which we have already discussed. However, in certain of the authority cited by Long Grove the issue arises at a different point in the trial proceedings. We think it proper to address briefly Long Grove's contentions against this background also.

As we have indicated, Mundelein's annexation proceedings were initiated before those of Long Grove. *Quo warranto* is the proper remedy for testing the legality of the proceedings by which territory has been annexed to a municipality. (*People ex rel. City of North Chicago v. City of Waukegan* (1983), 116 Ill. App. 3d 88, 91; *People ex rel. Gordon v. City of Naperville* (1975), 30 Ill. App. 3d 521, 523.) A city whose territory is alleged to have been annexed by another city qualifies as a citizen who may institute a *quo warranto* proceeding. (*People ex rel. Village of Long Grove v. Village of Buffalo Grove* (1987), 162 Ill. App. 3d 340, 345; *City of North Chicago*, 116 Ill. App. 3d at 92.) In a *quo warranto* proceeding the burden is on the defendant to justify the exercise of jurisdiction (*People ex rel. City of Leland Grove v. City of Springfield* (1988), 166 Ill. App. 3d 943, 945) and to prove its title or additional facts it relies on to bar the suit. (*People ex rel. Village of Northbrook v. City of Highland Park* (1976),

35 Ill. App. 3d 435, 439.) Thus, once it was determined that Mundelein, because of its priority, properly brought a *quo warranto* suit, the burden was on Long Grove to demonstrate that its annexation proceedings were legal, *i.e.*, that they conformed to the statute. Such a showing would have confirmed Long Grove's interest, and attendant rights, in the territory it wished to annex. The burden would then have shifted to Mundelein to prove that its annexation had been proper. However, Long Grove could not establish the necessary premise. Unable to carry its burden, Long Grove could claim no rights in the annexed territory and had no basis from which to challenge Mundelein's prior interest. Accordingly, the validity of Mundelein's ordinances never became an issue, and the trial court properly granted summary judgment for Mundelein. We are of the opinion that, were we to rule otherwise, the concept and function of priority of conflicting annexation proceedings would be rendered meaningless. Too, we stress that Mundelein acted on its annexation in response to petitions from the landowners and electors and that neither any landowners, electors, or residents on the land challenged Mundelein's actions.

Long Grove invokes *Village of Kildeer v. Village of Lake Zurich* (1988), 167 Ill. App. 3d 783, to support its position that the trial court should have considered the defects in Mundelein's annexation. As we have already pointed out, the trial court in *Kildeer* correctly refused to consider Lake Zurich's attack on the validity of Kildeer's ordinance when determining the preliminary question of whether Kildeer had standing to bring a *quo warranto* suit. Kildeer's standing was conferred by the priority of its ordinance. However, the trial court also found that Kildeer's ordinance, solely because it had priority and was undefeated, rendered Lake Zurich's annexation invalid, and Kildeer's motion for summary judgment was granted. On appeal, we found the court's failure to consider alleged flaws in Kildeer's annexation to be error because, as we explained, *quo warranto* is the kind of forum in which the matter before the court should be completely resolved and the rights of all the parties determined. We indicated that the court should have settled the issues raised by both the Kildeer and Lake Zurich annexation proceedings. (*Kildeer*, 167 Ill. App. 3d at 788-89.) Long Grove insists that, pursuant to *Kildeer*, its challenge to Mundelein should have been heard. We find no inconsistency between *Kildeer* and the outcome of this case.

Essentially, *Kildeer* means that a *quo warranto* inquiry need not end once priority is determined. Validity issues properly raised by the parties should be resolved. But *Kildeer* does not mean that *quo warranto* trial procedures should be ignored or that an annexing com-

munity should be subject to attack from a neighboring community which can show no interest in the annexation territory.

The *Kildeer* parties were subject to the same requirements for burden of proof that were imposed upon the parties in this case. The difference is that *Kildeer* did not progress as far as this case. Here, after determining priority, the trial court went forward and examined Long Grove's annexation. In *Kildeer* the trial court considered the fact, and only the fact, that Kildeer's proposed annexation was still pending. As a result, the proceedings never got beyond the priority issue. If they had, Lake Zurich would have had the exact same burden as Long Grove here. Only if Lake Zurich was successful in justifying its own annexation proceedings could the court have moved on to consider Kildeer's annexation. In this regard it is worthy of note that Kildeer, unlike Mundelein here, evidently did not attack the validity of Lake Zurich's annexation in terms of statutory compliance. Rather, Kildeer relied wholly on the priority of its own proceedings.

■■■ We conclude that, by following the proper procedure, the trial court in this case "adjudicate[d] the parties' rights, and [disposed] of the entire matter," as called for by *Kildeer*. (*Kildeer*, 167 Ill. App. 3d at 789.) In essence, when it was determined that Long Grove's annexation was void, Long Grove lost any rights it might otherwise have had in regard to the contested territory. Thus, there were no longer any conflicting rights to be settled.

In summary, we conclude that the trial court correctly found in favor of Mundelein on the legal issues of Mundelein's priority and the invalidity of Long Grove's annexation ordinance. Further, the trial court properly declined to scrutinize Mundelein's annexation proceedings since questions regarding the validity of those proceedings were not at issue. Accordingly, we need not consider Long Grove's numerous arguments asserting various defects in Mundelein's proceedings. (See *People ex rel. Village of Long Grove v. Village of Buffalo Grove* (1987), 162 Ill. App. 3d 340, 350-51.) Since Mundelein was entitled to judgment as a matter of law, and no pertinent factual questions remained unsettled, summary judgment in favor of Mundelein and against Long Grove was properly granted by the trial court. *Logan v. Old Enterprise Farms, Ltd.* (1990), 139 Ill. 2d 229, 233-34.

In accordance with the reasons set forth above the judgment of the circuit court of Lake County is affirmed.

Affirmed.

NICKELS and WOODWARD, JJ., concur.