*In re* PETITION TO ANNEX CERTAIN PROPERTY TO THE CITY OF WOOD DALE (John E. Matulis *et al.*, Petitioners-Appellants, v. Montalbano Builders, Inc., *et al.*, Objectors-Appellees).

Second District   No. 2—92—0407

Opinion filed April 8, 1993.

Patrick M. Loftus, of Law Offices of Patrick M. Loftus, of Addison, and Erwin W. Jentsch, of Mount Prospect, for appellants.

Barry L. Moss, Stuart D. Gordon, and George A. Marchetti, all of Moss & Bloomberg, Ltd., of Bolingbrook, for appellee Village of Addison.

Michael N. Schwartz and Thomas J. Bamonte, both of Sachnoff & Weaver, Ltd., of Chicago, for appellee Montalbano Builders, Inc.

JUSTICE GEIGER delivered the opinion of the court:

The petitioners, John E. Matulis and others, appeal from the circuit court's judgment of March 6, 1992, striking and dismissing their annexation petition. We affirm.

On October 7, 1991, petitioner-affiant John E. Matulis and numerous other petitioners (petitioners) filed in the circuit court a petition to annex a certain described tract of land to the City of Wood Dale, Illinois (Matulis petition). The petition requested the entry of an order of the court submitting the question of annexation to the corporate authorities of that city, presumably according to the provisions of section 7—1—2 of the Illinois Municipal Code (Code) (Ill.

Rev. Stat. 1991, ch. 24, par. 7—1—2). The petition alleged that the tract of land was contiguous to the City of Wood Dale; that the tract was not within the corporate limits of any municipality; and that the undersigned petitioners were a majority of the record owners and a majority of the electors residing on the tract of land.

Next to the signatures appended to the petition were various handwritten designations such as: "property owner," "property reg. voter," "owner-voter," "owner," "owner reg voter," "owner registered," "voter, property owner," and "homeowner voter." No addresses of the signatories were placed on the petition itself. The attached affidavit of John E. Matulis recited that he was one of the petitioners; that the persons signing the petition constituted a majority of the property owners of record and a majority of the electors of the territory described; that he had personal knowledge of the allegations contained in the petition; and that the allegations were true. In the record, there is also a typed list of names and street addresses allegedly corresponding to those of the signatories. The list was filed on October 16, 1991, without comment; there is no indication in the record that it was filed by motion or incorporated into the petition by amendment.

The objectors, Montalbano Builders, Inc. (Montalbano), and the Village of Addison (Addison), filed motions to dismiss the petition. (See Ill. Rev. Stat. 1991, ch. 24, par. 7—1—3.) Montalbano filed its emergency motion to dismiss on October 16, 1991; the motion averred that the Matulis petition lacked priority and was jurisdictionally defective because, in July 1991, Montalbano had previously filed a voluntary petition (see Ill. Rev. Stat. 1991, ch. 24, par. 7—1—8) to annex its property, located in unincorporated Du Page County, to Addison (Addison petition). Montalbano's property was also included in the property described in the Matulis petition. According to the Montalbano motion, its property, together with a contiguous parcel of land for which Montalbano had entered into a purchase agreement, was commonly known as the "Moose Lodge Property" and was already the subject of public hearings; Addison's Plan Commission had approved a pre-annexation agreement. A copy of the Addison petition is included in the record.

On October 16, 1991, Addison also moved to strike and dismiss the Matulis petition on the ground that it was facially invalid because it did not clearly show that the signatories were the record owners of property in the territory or that they were registered voters within that territory (electors). Among other things, Addison objected that many of the signatures were illegible; that there were

no addresses given for the signatories, nor were specific lots or parcels identified as belonging to the signatories; there were no facts showing that the signatories were registered voters ("electors") in the territory; and that it was impossible to tell from the petition itself the total number of record owners and electors who would constitute the majority necessary for annexation under section 7—1—2 of the Code. Addison's motion concluded that the petition was factually deficient, was conclusory, and was therefore invalid on its face.

On December 6, 1991, petitioners filed a motion to strike the objectors' motions to dismiss. Among other things, the petitioners urged that the circuit court was required to enter an order setting a hearing and, thereafter, interested persons could file objections (see Ill. Rev. Stat. 1991, ch. 24, pars. 7—1—2, 7—1—3); that the cause was to be heard without further pleadings; that the petition was to be supported by affidavit of one of the petitioners that the signatures represented a majority of the property owners and a majority of the electors of the territory; and that a petition so verified must be accepted as *prima facie* evidence of such facts (see Ill. Rev. Stat. 1991, ch. 24, par. 7—1—4). The petitioners characterized the objectors' motions as improper and premature.

Alternatively, the petitioners argued that their petition was sufficient where it included an affidavit conforming literally to the language of the Code (see Ill. Rev. Stat. 1991, ch. 24, par. 7—1—4). Additionally, in response to the motions attacking the jurisdictional requisites of their petition, the petitioners argued that Montalbano's voluntary petition filed with Addison (Addison petition or second petition) on July 11, 1991 (according to Montalbano's supplemental corrected affidavit filed by its controller, Richard P. Brandstatter), did not enjoy priority because on the same day, July 11, Montalbano still had pending and undefeated a prior petition Montalbano had filed with the City of Wood Dale (Wood Dale petition or first petition) which it had not yet withdrawn. Appended was an unsigned affidavit of Geraldine Jacobs, city clerk of the City of Wood Dale; the affidavit stated that she received a letter dated July 11 from Richard L. Wexler withdrawing the pending Wood Dale petition to annex the Moose Lodge Property.

The petitioners also argued that the Addison petition was not valid because the subject property was not yet contiguous to Addison or was not part of a larger annexation proceeding. The petitioners also characterized the Addison petition as an unauthorized "conditional" petition. On December 10, 1991, the petitioners filed

the signed affidavit of Geraldine Jacobs and the Wexler letter of July 11. The Wexler letter was dated July 11, 1992; on it was typewritten the statement *"VIA MESSENGER DELIVERY,"* and it was file-stamped "Received July 12, 1991 City of Wood Dale." In his letter of withdrawal, Wexler explained that another opportunity to annex with Addison pursuant to an annexation agreement would save his clients in excess of $250,000, and he concluded that the prior Wood Dale petition to annex the Moose Lodge Property "shall hereby be deemed to be and shall be null and void."

The supplemental affidavit of Richard P. Brandstatter filed in February 1992 stated that, on November 18, 1991, Addison's village board had passed an ordinance approving the annexation agreement covering the Moose Lodge Property and a rezoning of the property to a B-3 service district; on November 18, Montalbano and Addison had also signed the annexation agreement. Additionally, two landowners in the area between Addison and the Moose Lodge Property had voluntarily agreed to annexation. On November 20, 1991, the owners of certain property between Addison's boundary and the Moose Lodge Property filed their petition to annex the remaining intervening property to Addison (the connecting property petition), and an order of the court approved the connecting property petition on February 6, 1992. After the final action on this connecting property petition, the Moose Lodge Property would have a common boundary with Addison. The village was scheduled to take final action on this connecting property petition on February 18, 1992.

Montalbano's March 5, 1992, reply memorandum in support of its motion to dismiss petitioners' petition and in response to their countermotion argued that, as a result of the court's ruling of February 6 upholding the connecting property petition, the Moose Lodge Property was now contiguous with the Village of Addison and the annexation of the Moose Lodge Property was part of a larger, orderly effort by Addison to lawfully expand its municipal boundaries. According to the memorandum, from July through October 1991, Addison held public hearings and meetings on the annexation of the Moose Lodge Property. On November 18, 1991, Addison passed an ordinance approving the annexation agreement covering the Moose Lodge Property, and the agreement was executed by the parties. The 33-page annexation agreement was appended. Montalbano pointed out that amended section 7—1—8 of the Code provides that the property may be annexed if it is "contiguous to a municipality *at the time of annexation.*" (Emphasis added.) Ill. Rev. Stat. 1991, ch. 24, par. 7—1—8.

Montalbano also pointed out that section 11—15.1—1 provides that a municipality may enter into an annexation agreement with one or more owners of record and may annex land in the manner provided by article 7 of the Code "at the time the land is or becomes contiguous to the municipality"; the agreement is valid for a period of up to 20 years from the date of execution. (Ill. Rev. Stat. 1991, ch. 24, par. 11—15.1—1.) Montalbano urged that the law provided that contiguity did not have to exist at the time it initiated its petition, but contiguity must only exist at the time of annexation. Therefore, Montalbano's pending petition was not initially invalid for want of contiguity.

Montalbano maintained that its petition was first in time and was valid; therefore, the Matulis petition, which lacked priority, was facially invalid and should be dismissed. According to Montalbano, the Wexler letter withdrawing the first petition from Wood Dale was sent by same-day messenger on July 11, 1991, and the Addison petition was sent also on the same day by messenger. Because Montalbano had a right to withdraw its voluntary first petition at any time, it rejected petitioners' argument that Montalbano's second petition did not have priority because of the overlap in time between the withdrawal and receipt of its first petition from Wood Dale and its subsequent filing on the same day (July 11, 1991) of its second petition, the Addison petition. In any case, Montalbano argued that there was no prejudice shown by any overlap in its withdrawing and subsequent filing of the petitions on the same day.

Montalbano also challenged as without authority petitioners' assertion that a petition "conditioned" on the execution of an annexation agreement was invalid. Montalbano contended that annexation agreements are routinely executed after the petition has been filed. The record contains a copy of the court's order of February 6, 1992, in cause No. 91—MC—05 approving the annexation petition of certain other (unnamed) petitioners for submission to the corporate authorities of Addison for final action. There is also a letter purporting to file the Moose Lodge Property petition with Addison. The letter is addressed to Lucille A. Zucagro, the village clerk of Addison; it is marked *"VIA MESSENGER"* and dated July 11, 1991. There is also an amended supplemental affidavit of Brandstatter attesting to the filing on July 11 and the various public hearings and meetings of the village officials regarding the petition.

Addison's memorandum attacked the factual sufficiency of the Matulis petition with respect to the statutory requirements that a petition contain the signatures of a majority of record owners of

land in the territory and a majority of electors (registered voters) residing in the territory and concluded that the petition failed to meet any of the specific fact-pleading requirements under the Code of Civil Procedure. Due to illegible signatures, the lack of addresses, and insufficient designations as to the signatories' voting or residential status, Addison urged that it could not be determined from the face of the petition itself whether the owners and electors met the statutory requirements of section 7—1—2 of the Code. Addison posited that a conclusory affidavit could not cure a factually deficient pleading or petition; therefore, the Matulis petition should be stricken and dismissed.

At the hearing on the motions on March 6, 1992, it was brought to the court's attention that Addison had taken final action on the petition to annex to that village. After hearing further arguments, the court found that Montalbano's Addison petition filed on July 11, 1991, had priority over that of the petitioners. The court granted the motions to strike and dismiss the Matulis petition for the reasons set forth in the supporting memoranda and argued in open court; however, the motion to strike the petition on the ground of illegibility was denied. The order noted that counsel for the petitioners had made an offer of proof regarding the names and addresses of the petitioners. This timely appeal followed.

After examining petitioners' arguments on appeal, we perceive that the issues and subissues before this court are: (1) whether the Matulis petition was legally and factually sufficient where it was supported by affidavit pursuant to the Code and where the petition is alleged to have constituted *prima facie* evidence so as to require the objectors to overcome the facts so presented; (2) whether Montalbano's Addison petition was entitled to jurisdictional priority regarding the same property (Moose Lodge Property) where (a) its voluntary Addison petition was filed on the same date its first voluntary petition was withdrawn from Wood Dale and there is an alleged overlap of time between the withdrawal of the first and the filing of the second petition and (b) the Montalbano property was not contiguous at the time the petition was initiated; (3) whether the allegedly "conditional" Addison petition was entitled to priority; and (4) whether the objectors' motions to strike and dismiss were premature and should have been stricken. Each objector-appellee adopts the appellate arguments advanced by the other.

## JURISDICTIONAL PRIORITY

■■ Because of its importance in determining the overall contro-

versy, we first address whether Montalbano's Addison petition was entitled to "jurisdictional priority." (See *People ex rel. Village of Northbrook v. Village of Glenview* (1989), 194 Ill. App. 3d 560, 564-65.) The general rule governing conflicting petitions to annex or incorporate the same tract of land is that the first to initiate an annexation is entitled to priority over the territory against all other parties initiating such a proceeding at a later date. Priority in time, typically determined by the time of the "initiation" of the annexation proceedings, is conclusive. *Village of Mundelein v. Village of Long Grove* (1991), 219 Ill. App. 3d 853, 859.

It is critical to our analysis to note that priority, as the term is applied to competing annexation proceedings, is not dependent on the correctness or validity of the annexation petitions. Rather, as we have recently explained, priority refers to the well-established concept that multiple, overlapping annexation proceedings must generally be considered and completed in the order in which they were "initiated." *Mundelein*, 219 Ill. App. 3d at 858-59, citing *City of Countryside v. Village of La Grange* (1962), 24 Ill. 2d 163, 166; *In re Petition of the Village of Long Grove to Annex Certain Territory* (1987), 156 Ill. App. 3d 1056, 1059.

As in the present case of the Addison petition, a section 7—1—8 voluntary annexation proceeding is "initiated" by the filing of a petition by the landowner, and the annexation is completed by the final action of the municipality. (*Mundelein*, 219 Ill. App. 3d at 859; Ill. Rev. Stat. 1991, ch. 24, par. 7—1—8.) Public policy and fundamental fairness favor voluntary annexations by landowners over involuntary annexations. *Northbrook*, 194 Ill. App. 3d at 565, 567.

As in the case of the Matulis petition, a section 7—1—2 annexation is court controlled and is "initiated" by filing in the circuit court a written petition signed by a majority of the owners of record in the territory to be annexed and a majority of the electors residing in such territory. *In re Annexation to the City of Prospect Heights* (1982), 111 Ill. App. 3d 541, 542.

Alternatively, an annexation under section 7—1—2 of the Code may be "initiated" by the enactment and filing in the court of a municipal ordinance expressing a desire to annex the described territory. (*In re Annexation to the City of Prospect Heights* (1982), 107 Ill. App. 3d 1045, 1048.) Various steps must be taken to complete the annexation process, including, among others, the provision of notice and a hearing upon the petition to permit objections and to ascertain its validity and, depending on the type of petition, court action to submit for final action the question of annexation to the

electors or corporate authorities. Ill. Rev. Stat. 1991, ch. 24, pars. 7—1—2 through 7—1—5.

The petitioners argue that because Montalbano's petition to annex to Wood Dale was still "pending" on July 11 at the time the second petition to annex to Addison was filed, the petition to annex to Addison was a nullity and did not enjoy priority over the petitioners' Matulis petition which was filed three months later in October. We believe this is an imprecise statement of the facts and the law as applied here. In challenging the priority of Montalbano's Addison petition, the petitioners initially rely on a general formulation of the priority rule which states that, where an annexation petition is pending with respect to the same territory, no other annexation may be initiated (see *People ex rel. Village of Long Grove v. Village of Buffalo Grove* (1987), 160 Ill. App. 3d 455, 459). In our estimation, this is an incomplete and overly simplistic formulation of the rule.

A careful reading of *Countryside, Mundelein,* and other cases persuades us that the more complete formulation of the rule is this: as to the same territory or a part thereof, an annexation petition or proceeding may not *legally* be initiated or effectuated *so long as* a prior petition or proceeding remains pending and undefeated or unresolved. (*Countryside,* 24 Ill. 2d at 166; *Mundelein,* 219 Ill. App. 3d at 859; *People ex rel. First National Bank v. City of North Chicago* (1987), 158 Ill. App. 3d 85, 106.) In other words, a later petition, filed during the pendency of an earlier initiated petition, does not lawfully come into being and enjoy jurisdictional priority so long as the earlier petition remains pending and unresolved. This does not mean that a petition may not be filed during the pendency of a prior petition.

As a practical matter, successive petitions or proceedings are routinely "initiated" (but not legally) during the pendency of others prior in time. However, a later-filed petition, even though initiated during the pendency of another petition, may become "legally" initiated if the prior petition is abandoned, defeated or otherwise deemed invalid, that is, a later petition may acquire "jurisdictional priority." This is what occurred in *Countryside,* which is the leading case applying the priority rule. We examine that case below. Thus, where there are overlapping annexation claims, a court will first consider the jurisdictional priority of a petition initiated first in time over a later-initiated claim; the court will then resolve its validity before it can consider the later-initiated proceeding. *Mundelein,* 219 Ill. App. 3d at 859.

In *Countryside*, the City of Countryside initiated the annexation of an 80-acre tract of land by adopting an ordinance and filing it in the county court on February 23, 1961. The Village of La Grange later filed objections to Countryside's annexation on the ground that a portion of the territory which Countryside sought to annex had already been annexed by La Grange by ordinance on March 15, 1961. Under the statutory procedure used by La Grange, the purported annexation would be considered completed upon the adoption of the ordinance. The *Countryside* court first held that La Grange had no power or authority to effect an annexation of the same territory so long as Countryside's petition was on file and undefeated.

In *Countryside*, the owners of the 80-acre tract also filed objections in the case. They had filed an earlier petition on June 8, 1960, with the Village of McCook asking that village to annex their property. They argued that, since their petition regarding the same tract that Countryside sought to annex was still on file with McCook and remained undefeated, Countryside could not attempt to annex the same property. Relying on *People ex rel. Village of Worth v. Ihde* (1961), 23 Ill. 2d 63, the supreme court held that since McCook had taken no further action on its petition by the time Countryside had initiated its annexation on February 23, 1961, this delay and inaction deprived McCook of any priority which it might have acquired over the territory in question. Therefore, the McCook petition (which was first in time and lawfully initiated) was not a bar to Countryside's later petition. We view this latter holding of *Countryside* to mean that: (1) an earlier jurisdictional priority may be abandoned (see *Ihde*, 23 Ill. 2d at 68); and (2) a later petition filed during the pendency of an earlier initiated proceeding may then acquire jurisdictional priority when the earlier petition is defeated or abandoned.

■ Applying these principles to the facts in the case at bar, we believe that Montalbano's first petition filed with Wood Dale was effectively abandoned when it withdrew that petition on July 11, 1991, by sending a messenger with a notice of withdrawal on that date. It is well established that, unless otherwise restricted by law, a petitioner has the right to withdraw (his name) from a petition at any time until final action is taken on it. (See *Crocher v. Abel* (1932), 348 Ill. 269, 274.) A body authorized to act on a matter does not acquire or retain jurisdiction over the matter of the petition unless the requisite number of names on the petition remain in effect; a timely withdrawal may defeat jurisdiction. (See *Konald v. Board of Education of Community Unit School District 220* (1983), 114 Ill.

App. 3d 512, 515-21.) The fact that the city clerk of Wood Dale did not mark the withdrawal received until July 12 is of no legal consequence under the particular facts presented. To conclude otherwise would be to put form over substance. The intent to abandon its first voluntary petition was manifested on July 11 when the objector issued its notice of withdrawal to Wood Dale and immediately thereafter filed a new petition with the Village of Addison. The objector did what any practical businessperson or lawyer would have done in order to protect its priority and to preempt any other involuntary annexation of its property from intervening between the time it withdrew its first petition with Wood Dale and filed its second petition with Addison.

The petitioners have cited no pertinent authority requiring that the withdrawal be effective only as of the date it was officially acknowledged. The petitioners attempt to characterize Montalbano's second petition as a nullity because of the possible overlap in time. Even assuming *arguendo* that the withdrawal was not effective until officially acknowledged as received by Wood Dale, there was no intervening petition and therefore no prejudice to any other party. Under the principle that a petition later in time can acquire legal jurisdictional priority when an earlier one is abandoned or defeated, the Addison petition was still next in line as of July 12. The objector's Addison petition therefore acquired jurisdictional priority over the Matulis petition which was filed three months later, and the Addison petition could only lose that priority if it were shown to be otherwise defeated or invalid. The trial court correctly ruled that the Addison petition had jurisdictional priority over any subsequent one.

## FACIAL VALIDITY OF OBJECTORS' PETITION

■ The petitioners next argue that Montalbano's property was not contiguous to Addison at the time the Addison petition was filed and was not part of a larger pending proceeding; therefore, the Addison petition was invalid. The petitioners cite no relevant current authority to support these arguments which are wholly without merit. The plain language of section 7—1—8 of the Code shows that contiguity in a proceeding under that section is required only "at the time of annexation" and need not be contemporaneous with the filing of the petition. (*People ex rel. Village of Northbrook v. Village of Glenview* (1989), 194 Ill. App. 3d 560, 568.) In addition, in conjunction with the annexation procedures outlined in article 7 of the Code, section 11—15.1—1 of the Code allows a munici-

pality to enter into an annexation agreement regarding land that "is or becomes contiguous" to the municipality without affecting the validity of the agreement for a period of up to 20 years from the date of the execution of the agreement. Ill. Rev. Stat. 1991, ch. 24, par. 11—15.1—1.

■ Similarly, we find no relevant authority supporting the petitioners' argument that the initially noncontiguous property, which was the subject of the Addison petition, must be part of a larger, pending, simultaneous annexation proceeding. Based on the meager facts and law presented by the petitioners, we are unable to read such a mandatory requirement into section 7—1—8 of the Code in conjunction with section 7—1—48 of the Code (Ill. Rev. Stat. 1991, ch. 24, pars. 7—1—8, 7—1—48). Neither do we find such a requirement expressed in *Northbrook* (194 Ill. App. 3d at 568-69), a case cited by the petitioners. Section 7—1—48, discussed there, merely permits the annexation of multiple parcels in accordance with article 7 as part of a single annexation proceeding.

In any event, there are only limited facts in the record before us pertaining to the connecting parcel petition upon which final action by Addison was taken during the course of the proceeding. It appears that the requisite contiguity was achieved and the Addison petition became final during the course of this proceeding. We have already concluded that the Addison petition did not require contiguity at the time it was initiated. The trial court apparently took judicial notice of the other ongoing proceeding and presumably considered the present proceeding to be part of a larger effort, but we do not have sufficient facts in this record upon which to examine any alleged impropriety stemming from the other proceeding—a proceeding which is not before this court. Any doubts resulting from the incompleteness of the record must be resolved against the appellants. (*Palmisano v. Connell* (1989), 179 Ill. App. 3d 1089, 1099.) We cannot review matters outside the record. *Pharr v. Chicago Transit Authority* (1991), 220 Ill. App. 3d 509, 518.

■ The petitioners' argument that the Addison petition was invalid because it was "conditioned" on the execution of an annexation agreement also must fail. Again the petitioners have provided us no authority why a voluntary petition must be deemed facially invalid because it is conditioned upon the execution of an annexation agreement. *People ex rel. Village of Buffalo Grove v. Village of Long Grove* (1990), 199 Ill. App. 3d 395, 414-15, cited by the petitioners, most assuredly does not stand for the proposition that a petition loses its jurisdictional priority merely because the petitioner

seeks to obtain certain agreements from a municipality as a condition of proceeding with the annexation. In fact, that court rejected the argument that such conduct constituted an abandonment of the petition.

We decline to hold that a conditional annexation agreement will necessarily invalidate an otherwise voluntary, facially valid petition to annex. We have already noted that public policy favors voluntary annexations. We agree with the objectors that, through the provisions for annexation agreements, the legislature has made available an orderly mechanism by which municipalities, landowners, and electors can structure the inclusion of unincorporated territory into an adjoining municipality. Such voluntary agreements facilitate informed choices by the parties as to whether the territory should be annexed and under what conditions.

The petitioners have furnished us with no authority and no compelling reason why an otherwise voluntary, facially valid annexation petition should be invalidated because it is conditioned upon the execution of an annexation agreement, and we will not disturb an otherwise valid petition on this ground. The statutory provisions relied on are silent as to when an annexation agreement must be executed. If the legislature wishes to restrict the use of petitions which incorporate conditional annexation agreements, it can easily do so.

## VALIDITY OF THE PROCEEDINGS

The petitioners also argue that the objectors' motions should have been stricken as premature and improper because the trial court was required to set a time for a hearing not less than 20 nor more than 30 days after the filing of the petition or ordinance (Ill. Rev. Stat. 1991, ch. 24, par. 7—1—2(a)), and only then may interested persons file objections. The petitioners also argue that the cause is to be heard without further pleadings (see Ill. Rev. Stat. 1991, ch. 24, par. 7—1—4), and the pleadings are limited to objections to the petition (presumably only as stated in section 7—1—3 of the Code); the petitioners also complain that the objectors should not base their motions to dismiss on the provisions of the Code of Civil Procedure (see Ill. Rev. Stat. 1991, ch. 110, pars. 2—612, 2—615, 2—619).

■ These arguments are disingenuous at best and frivolous at worst. The petitioners disregard the long-established authority which states that the time-for-hearing provisions in section 7—1—2(a) are merely directory and not mandatory for the court. The failure of the court to fix a date for hearing specified by section 7—1—

2(a) of the Code therefore does not affect the validity of the proceedings. *In re Annexation of Certain Territory to the City of Darien* (1973), 16 Ill. App. 3d 140, 145; see also *In re Disconnection of Certain Territory from the Village of Machesney Park* (1984), 122 Ill. App. 3d 960, 966.

Moreover, the procedures in annexation cases are in fact controlled by the Code of Civil Procedure to the extent they are not regulated by the Municipal Code. (*In re Petition of the Village of Kildeer to Annex Certain Territory* (1988), 124 Ill. 2d 533, 543; Ill. Rev. Stat. 1991, ch. 110, par. 1—108(b).) According to section 7—1—3 of the Code, the objectors could file their objections at any time after the filing of the petition but not less than five days prior to the date fixed for the hearing. The objections here were not untimely as they were filed after the petition and well before the hearing.

The objections are not limited solely to the four matters specified in section 7—1—3 of the Code, but may go to "any matter going to the validity" of the petition or ordinance. (*In re Petition of the Village of Kildeer to Annex Certain Property* (1987), 162 Ill. App. 3d 262, 269, quoting *City of East St. Louis v. Touchette* (1958), 14 Ill. 2d 243, 248.) Here, utilizing established pleading procedures under the Code of Civil Procedure, the objectors properly intervened to challenge the jurisdictional aspects of the petition and sought dismissal based on its invalidity, a proper remedy under the Municipal Code (see Ill. Rev. Stat. 1991, ch. 24, par. 7—1—4).

In view of our prior discussion, we conclude that Montalbano's Addison petition was facially valid and was first in time. It acquired jurisdictional priority over the Matulis petition which contained land encompassed by the Addison petition. During the pendency of the Addison annexation petition (which annexation appears to have been completed during this proceeding), the Matulis petition was never amended and could not acquire jurisdictional priority during the proceedings below which are the subject of this appeal. The trial court's ruling on the jurisdictional priority of the Addison petition must be affirmed.

## INVALIDITY OF PETITIONERS' PETITION

■ As an additional ground to affirm the trial court, we also believe that the Matulis petition was deficient as to its jurisdictional facts and was therefore facially invalid. According to section 7—1—2, among other things, the petition must demonstrate several jurisdictional facts including: (1) the signatures of a majority of the own-

ers of record of land in the territory; (2) the signatures of a majority of the electors, that is, registered voters residing in the territory; (3) the contiguity of the territory with the municipality to which annexation is requested; (4) the territory is not within the corporate limits of another municipality; and (5) an adequate legal description of the territory. Ill. Rev. Stat. 1991, ch. 24, pars. 7—1—1.1, 7—1—2.

The objectors complain that the facts in the petition are deficient in showing that the signatories are, in fact, the owners of record of specific property in the territory. There are no addresses given for the signatories, and no particular parcels are identified as being owned by the signatories; similarly, the signatories are not identified specifically as "electors," that is, registered voters residing in the territory. The objectors claim that it is impossible to tell from the facts in the petition what constitutes a majority of owners and electors and that the petition as well as the affidavit contain merely conclusions of fact and law. The objectors argue that a petition should be treated as a pleading and must be fact specific. The thrust of their argument is that a conclusory affidavit, even though statutorily sufficient, cannot cure a conclusory petition. We agree.

We have noted that where the specific statute is silent, the proceedings will be governed by the Code of Civil Procedure. (*Kildeer*, 124 Ill. 2d at 543.) The petition must allege specific facts to bring it within the statute. (See *First National Bank v. Village of South Pekin* (1940), 303 Ill. App. 269, 279-80, *rev'd in part on other grounds sub nom. Illinois Central R.R. Co. v. Village of South Pekin* (1940), 374 Ill. 431.) A petition is usually defined as a request or application in writing made to a court requesting judicial action. (*Benton Coal Mining Co. v. Industrial Comm'n* (1926), 321 Ill. 208, 214.) As such, a petition is a pleading; it must conform to the statute granting the right and must show all the facts necessary to authorize the court to act (*Brown v. VanKeuren* (1930), 340 Ill. 118, 122). The requirements for the circuit court's statutory subject-matter jurisdiction demand strict compliance, and proof of the court's jurisdiction must affirmatively appear in the record. *Evans v. Corporate Services* (1990), 207 Ill. App. 3d 297, 302; see *Frye v. Hunt* (1936), 365 Ill. 32, 36-38.

Illinois is a fact-pleading State, and a pleading must contain specific facts to bring the claim within the legally recognized cause of action; otherwise, the pleading must be dismissed. (*People ex rel. Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300, 308.) On a motion to dismiss, the pleadings are construed strictly against the

pleader, and a pleading which merely paraphrases the law as though to say that the case will meet the legal requirements without stating the essential facts is insufficient. (*Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 423-24.) It is insufficient to plead mere conclusions. For example, in a negligence case, it is insufficient to allege that a defendant had a duty and that it was breached and the breach resulted in injury. The pleader must allege specific facts from which the law will raise a duty and from which it can conclude that the duty was breached and this resulted in injury to the plaintiff. See *Bell v. Village of Midlothian* (1980), 90 Ill. App. 3d 967, 969.

Here, the petition has signatures, but contains no specific facts regarding the addresses or residences of the signatories and whether they are in fact registered voters residing within the territory. In the absence of supporting facts, the designations "owner," or "property owner," or "voter" are insufficient to provide the facts needed to satisfy the statute. The petition does not state what number of signatures is required to form a majority and what number qualified in any category. There is no circulator's certification of the signatures. While a conclusory affidavit itself may be sufficient if it tracks the language of a statute, we do not believe that a conclusory affidavit can cure the factual deficiencies of the petition.

In *Frye*, the court determined that, in a petition-initiated proceeding to organize a high school district, where neither the affidavit nor the petition provided the information needed regarding whether the signatories were legal voters who actually resided within the territory and constituted a required specified number of petitioners and where the petition did not indicate whether the territory was contiguous and compact, the petition was insufficient. The petition contained insufficient jurisdictional facts, and it rendered the proceeding void.

Section 7—1—4 of the Code provides that a petition shall be supported by an affidavit stating that the signatures on the petition represent a majority of the property owners of record of land in the territory described and a majority of the electors of the territory therein described. Petitions so verified shall be accepted as *prima facie* evidence of such facts. (Ill. Rev. Stat. 1991, ch. 24, par. 7—1—4.) *Prima facie* evidence is evidence sufficient to authorize a finding on the matter in issue unless contradicted or explained. (*Shelter Mutual Insurance Co. v. Bailey* (1987), 160 Ill. App. 3d 146, 157.) We are aware of the general rule that the affidavit itself may be deemed sufficient if it tracks the language of the statute. (See *In re*

*Petition to Annex Certain Territory to the Village of South Barrington* (1972), 7 Ill. App. 3d 958, 962.) However, unlike the case before us, in two of the cases relied on by the petitioners, the evidentiary record clearly showed that the information in the petition was also sufficient. See *Barrington*, 7 Ill. App. 3d 958; *In re Petition for Annexation of Territory in the County of Kankakee* (1961), 30 Ill. App. 2d 391.

In the other two cases cited, these jurisdictional facts are not sufficiently described in the opinion (*In re Annexation of Certain Territory to the Village of Oak Brook* (1968), 91 Ill. App. 2d 27) or were actually contradicted by the evidence in the record (*In re Petition to Annex Certain Real Estate to Crest Hill* (1975), 26 Ill. App. 3d 99).

We believe that where the factual allegations in the petition render it vague or ambiguous, the petition cannot stand. (See *In re Annexation to the Village of Green Oaks* (1978), 58 Ill. App. 3d 842.) The facts in the petition should be complete enough so that the circuit court need only ascertain the truth of the allegations and whether the statutory requirements have been met; it should not have to guess at the sufficiency of the petition with respect to the statutory requirements. The obvious purpose of section 7—1—4 is that the affidavit be used to *verify* the facts stated in the petition. An affidavit is not a pleading and cannot ordinarily be made to take the place of a pleading. (See *Brady v. Yount* (1953), 42 Wash. 2d 697, 699, 258 P.2d 458, 459.) The affidavit goes to the truthfulness of the *facts stated in the petition*, not to the sufficiency of the allegations in the petition. By the language of the statute itself, it is the factual matter in the petition which enjoys a presumption of *prima facie* evidence, not the affidavit. A petition properly verified should enjoy the presumption of *prima facie* evidence only with respect to the specific facts actually alleged—facts which, if true, will sustain the cause of action.

By analogy to the *Frye* case, we believe that neither the affidavit nor the petition contained facts sufficient to confer subject-matter jurisdiction. The petition was not amended by the time of the hearing, and the offer of proof consisted merely of a typewritten list of names and addresses. This last-minute offer of proof was not a substitute for a timely and sufficient amended petition. Even an amended petition would not have "related back" to the time of the filing of the original petition. (See *In re Organization of Byron Park District* (1978), 67 Ill. App. 3d 61, 65.) The court was there-

fore correct in finding the Matulis petition invalid because it was factually insufficient.

For the reasons stated, the judgment of the circuit court is affirmed.

Affirmed.

WOODWARD and DOYLE, JJ., concur.